DJW/1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CAPITAL SOLUTIONS, LLC,**

        **Plaintiff,**

**vs.**                                   **Case No. 08-2027-JWL-DJW**

**KONICA MINOLTA BUSINESS SOLUTIONS**
**U.S.A., INC., et al.,**

        **Defendants,**

_____

**BANK OF OKLAHOMA, N.A.,**

        **Plaintiff,**

**vs.**                                   **Case No. 08-2191-KHV-DJW**

**CAPITAL SOLUTIONS, LLC, et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

On March 23, 2009, a telephone hearing was held in these two consolidated cases regarding Defendant Konica Minolta Business Solutions U.S.A., Inc.'s Motion for Extension of Time in Which to Make Rule 26(a)(2) Disclosures (doc. 118).  During that hearing, the Court issued an oral ruling denying Plaintiff Capital Solutions, LLC's Motion to Amend (doc. 87).  The Court indicated that a written opinion would follow. This opinion will set forth the Court's reasons for denying the Motion to Amend.

Capital Solutions, LLC ("Capital Solutions") sought leave to file a second amended complaint against Konica Minolta Business Solutions USA, Inc. ("Konica") and Bank of Oklahoma,

N.A. ("Bank of Oklahoma") in Case No. 08-2027-JWL-DJW.  Capital Solutions sought leave to

amend the First Amended Complaint to add the following claims for:

1. Conversion against Konica[1]
2. Punitive damages against Konica on the breach of fiduciary duty claim already asserted against Konica;[2]
3. Fraud by silence against Konica;[3]
4. Negligence and negligent misrepresentation against Konica;[4]
5. Bad faith and breach of the duty of good faith imposed by state law;[5] and
6. Punitive damages, attorney's fees, and prejudgment interest against Bank of Oklahoma under one or more of the claims asserted in Count VII;[6]

The proposed Second Amended Complaint also seeks the appointment of a receiver.[7]

## I. Background Facts

### A. Allegations in the First Amended Complaint

#### 1. Claims against Konica

According to the allegations in Capital Solutions' First Amended Complaint (doc. 21), this

lawsuit arises out of a financing arrangement between Capital Solutions and Konica.  Capital

Solutions is in the business of providing financing for and leasing office equipment and other

machinery.  Konica is in the business of distributing copiers for sale to businesses.  Capital Solutions

provided financing for and leased certain copiers to customers serviced by Konica.  By agreement,

---

[1]*See* Proposed Second Am. Compl., attached as Ex. 1 to Mot. to Amend (doc. 87), Count I, ¶ 24 and Wherefore Clause.

[2]*Id.*, ¶ 31, Count II.

[3]*Id.*, ¶¶ 61-65, Count V.

[4]*Id.*,¶¶ 66 - 70, Count VI.

[5]*Id.*, ¶¶ 75, 77, Count VII.

[6]*Id.*, ¶ 79, Count VII; Final Wherefore Clause at 12-13.

[7]*Id.*, Final Wherefore Clause at 13.

Konica was to bill and collect lease payments and other fees due to Capital Solutions from these customers.  Capital Solutions alleges in its First Amended Complaint that (1) Konica failed to remit these payments to Capital Solutions in a timely manner, (2) Konica failed to make timely and diligent efforts to collect these payments, and (3) Konica failed to accurately account for payments collected on behalf of Capital Solutions.  Capital Solutions claims that, as a result, Capital Solutions' relationship with its financial institutions and customers became strained and endangered, it incurred interest costs and other expenses it would not otherwise have incurred, it lost a banking relationship, its business expectancies were destroyed, and it lost value in the collateral.

In the First Amended Complaint, Capital Solutions asserted claims against Konica for an accounting (Count I), breach of fiduciary duty (Count II), breach of contract (Count III), tortious interference with business relations (Count IV), fraud (Count V), and negligence (Count VI).

### 2.    *Claims against Bank of Oklahoma*

In its First Amended Complaint, Capital Solutions also asserted a number of claims against Bank of Oklahoma.  In Count VII, it asserted causes of action for negligence, breach of fiduciary duty and good faith, conversion, and violation of the anti-tying provisions of the Bank Company Holding Act, 12 U.S.C. § 1972 (Count VII).

The First Amended Complaint alleged that Bank of Oklahoma withdrew funds from Capital Solutions' account (without Capital Solutions' authorization) to pay the obligation of an entity by the name of Southwinds, LLC ("Southwinds"), "thereby converting these funds to its own benefit."[8] According to the First Amended Complaint, Capital Solutions and Southwinds are separate and distinct entities that share an identity of members, and Bank of Oklahoma extended credit to both

---

[8]*Id.*, ¶ 68.

without consideration of the other.  Capital Solutions also alleges that Bank of Oklahoma conditioned forbearance of the loans at issue in this case (i.e., relating to Capital Solutions' financing arrangement with Konica) on payments of loans involving Lee Ullman, who is not a member of either Capital Solutions or Southwinds.  The First Amended Complaint alleges that throughout Capital Solutions' relationship with Bank of Oklahoma, Bank of Oklahoma has continually tied the two loans together in violation of the anti-tying provisions of 12 U.S.C. § 1972.

The First Amended Complaint further alleged as follows:  Bank of Oklahoma refused to cooperate in the closing of certain loans involving Southwinds because of its alleged concerns regarding Capital Solutions' loans.  These actions were in bad faith and constituted an interference with Capital Solutions' business.  These banking practices were unusual in the banking industry, and they benefitted Bank of Oklahoma because the bank's actions caused Capital Solutions to pay increased interest and late charges and to suffer a loss of value in the collateral.  Furthermore, Bank of Oklahoma essentially took over Capital Solutions' business in 2007 and instructed Capital Solutions not to take certain commercially reasonable actions.  Once Bank of Oklahoma undertook to instruct Capital Solutions in conducting its business, a special relationship arose that created a duty to give timely and proper advice.  Bank of Oklahoma's instructions were imprudent, were a breach of fiduciary duty created by its intrusion and takeover of Capital Solutions' business, and were a breach of the duty of good faith imposed by state law.  As a result, Capital Solutions claimed it suffered unnecessary fees, interest, loss of business expectancies, loss of profits, and a loss of value in the collateral.

### B.    Motions to Dismiss and Rulings Thereon

Both Konica and Bank of Oklahoma moved to dismiss portions of the First Amended Complaint.  On May 5, 2008, Konica moved to dismiss the fraud and negligence claims against it.

On July 14, 2008, the Court entered an Order dismissing the negligence claim (Count VI), finding that the duties Konica had allegedly breached and which gave rise to the negligence claim were duties imposed by the parties' contract and not by law.[9]  The Court held that those contractual duties could not support liability for negligence and that Capital Solutions had failed to allege any other duty that would support a claim for negligence.  The Court also dismissed Capital Solutions' claim for fraudulent inducement (contained in Count V), which alleged that Konica entered into both oral and written contracts with Capital Solutions with no intention of honoring the agreements.  The Court held that Capital Solutions failed to plead those allegations with the degree of particularity required by Federal Rule of Civil Procedure 9(b).  The Court, however, declined to dismiss the "performance fraud" claim (also contained in Count V), which was pled as an alternative to the breach of contract claim and which was based on allegations that Konica made material representations to Capital Solutions that it would collect and remit amounts due from Capital Solutions' customer and provide an accurate accounting of the collections and remittances.

On May 29, 2008, Bank of Oklahoma moved to dismiss all of the claims Capital Solutions asserted against it.  The Court granted the motion in part, and dismissed Capital Solutions' claims for negligence, bad faith, and violation of the anti-tying provisions of 12 U.S.C. § 1972.[10]  It declined to dismiss the breach of fiduciary duty and conversion claims.

### C.    The Scheduling Order Deadlines

Capital Solutions filed this action (Case No. 08-2027-JWL-DJW) on November 11, 2008.  A Scheduling Order was issued on July 15, 2008, at which time the Court set a September 1, 2008

---

[9]*See* July 14, 2008 Mem. and Order (doc. 53).

[10]*See* August 11, 2008 Mem. and Order (doc. 69).

deadline for filing motions for leave to amend the pleadings.[11]  Although the Scheduling Order was later amended on November 5, 2008,[12] and then again on December 19, 2008,[13] the deadline for amending the pleadings was not changed.  The December 19, 2008 Scheduling Order set June 1, 2009 as the deadline for completing discovery and scheduled the Pretrial Conference for June 16, 2009.[14]  Trial is set for January 5, 2010.

## II.    Standard for Ruling on a Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), once a responsive pleading has been filed, as in this case, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[15]  Rule 15(a)(2) specifies that the court "freely give leave when justice so requires."[16]  Nonetheless, a court may refuse to grant leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[17]

When the deadline for amending pleadings set in the scheduling order has passed, as is the case here, Federal Rule of Civil Procedure 16(b)(4) is implicated.  Rule 16(b)(4) provides that a

---

[11]Scheduling Order (doc. 54), ¶ 3.a.

[12]*See* Nov. 5, 2008 Am. Scheduling Order (doc. 94).

[13]*See* Dec. 19, 2008 Am. Scheduling Order (doc. 101).

[14]The Court recently amended the Scheduling Order again, which extended discovery and continued the pretrial conference to August 3, 2009.  *See* June 5, 2009 Am. Scheduling Order (doc. 141).

[15]Fed. R. Civ. P. 15(a)(2).

[16]*Id.*

[17]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

scheduling order "may be modified only for good cause and with the judge's consent."[18]  In *Minter*

*v. Prime Equipment Co.,*[19] the Tenth Circuit expressly declined to "decide whether a party seeking

to amend its pleadings after the scheduling order deadline must show 'good cause' for the

amendment under Rule 16(b) in addition to the Rule 15(a) requirements," as that issue was not

argued by the parties.[20]

Prior to *Minter*, this Court applied a two-step analysis based on both Rule 16(b) and Rule

15(a) when faced with a request to amend a complaint past the scheduling order deadline.[21]  This

practice has continued in cases decided after *Minter*.[22]  Thus, when a motion to amend is filed

---

[18]Fed. R. Civ. P. 16(b)(4).  In addition, the Scheduling Order in this case states that the schedule "shall not be modified except by leave of court upon a showing of good cause."  Doc. 17 at p. 10.

[19]451 F.3d 1196, 1205 (10th Cir. 2006).

[20]*Id.* at n. 4.

[21]*See, e.g., Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group*, No. 02-1185-WEB, 2003 WL 21659663, at *2 (D. Kan. Mar. 13, 2003) ("When a party seeks leave to amend after the deadline established in a pretrial scheduling order, however, that party must satisfy the standards set forth in Fed. R. Civ. P. 16(b), as well as Fed. R. Civ. P. 15(a)."); *Deghand v. Wal-Mart Stores, Inc.*, 904 F.Supp. 1218, 1221 (D. Kan. 1995) ("Because the plaintiff sought leave to amend her complaint after the deadline established in the pretrial scheduling order, Rule 16 of the Federal Rules of Civil Procedure is the plaintiff's first hurdle. . . .  Rule 15 is the next hurdle for the plaintiff.").

[22]*See, e.g., Miller v. Union Pac. R.R.,* No. 06-2399-JAR-DJW, 2008 WL 4271906, at *2 (D. Kan. Sept. 12, 2008) (expressly noting that this Court continues to apply the two-step analysis based on Rule 16(b) and Rule 15(a) when a motion to amend is filed past the scheduling order deadline); *Wilson v. Wal-Mart Stores, Inc.,* No. 07-2263-JWL, 2008 WL 2622895, at *2-3 (D. Kan. June 30, 2008) (recognizing that "[c]ourts in this District apply the standards set forth in Federal Rules of Civil Procedure 15(a) and 16(b) when the motion to amend a complaint is filed after the scheduling deadline," and denying motion to amend where plaintiff failed to show good cause for filing motion to amend seven months after the amendment deadline); *Ice Corp. v. Hamilton Sundstrand Corp*., No. 05-4135-JAR, 2007 WL 4570930, at *2 (D. Kan. Dec. 27, 2007) ("When a motion to amend is filed out of time, the court must examine the liberal amendment policy of Fed. R. Civ. P. 15(a) in conjunction with the good cause standard of Fed. R. Civ. P. 16(b).") (internal quotations and citations omitted); *Boatright v. Larned State Hosp.*, No. 05-3183-JAR, 2007 WL 2693674, at *5 (D. (continued...)

beyond the scheduling order deadline, this Court will first determine whether the moving party has established "good cause" within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion.  Only after determining that good cause has been established will the Court proceed to determine if the liberal Rule 15(a) standard for amendment has been satisfied.[23]

To establish good cause under Rule 16(b)(4), the moving party must show that the amendment deadline could not have been met even if it had acted "with due diligence."[24] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[25]  Furthermore, the lack of prejudice to the nonmovant does not show "good cause."[26]  A district court's determination as to whether a party has established good cause sufficient to modify

---

[22](...continued)
Kan. Sept. 10, 2007) ("[C]ourts in the District of Kansas have routinely held that when considering a motion to amend filed after the deadline established in a scheduling order, the court must determine whether 'good cause' within the meaning of Fed. R. Civ. P. 16(b) has been sufficiently demonstrated to justify allowing the untimely motion and if the Fed. R. Civ. P. 15(a) standards have been satisfied.") (internal quotations and citations omitted).

[23]*See Boatright*, 2007 WL 2693674, at *6 (recognizing the Rule 15(a) standard as more lenient than the "good cause" standard of Rule 16(b)); *Geer v. Challenge Fin. Inv. Corp.*, No. 05-1109-JTM, 2007 WL 1149131, at *2 (D. Kan. Apr. 18, 2007) (same).

[24]*Boatright,* 2007 Wl 2693674, at *5; *accord Lone Star Steakhouse*, 2003 WL 21659663, at *2 (party moving to amend after the scheduling order deadline "must show that despite due diligence it could not have reasonably met the scheduled deadlines."); *Deghand*, 904 F.Supp. at 1221 (the moving party "must show that despite due diligence it could not have reasonably met the scheduled deadlines.").

[25]*Lone Star Steakhouse*, 2003 WL 21659663, at *2 (quoting *Johnson* v. *Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992)); *accord Deghand*, 904 F.Supp. at 1221.

[26]*Lone Star Steakhouse,* 2003 WL 21659663, at *2; *Deghand*, 904 F. Supp. at 1221 (citations omitted).

a scheduling order amendment deadline is within the court's discretion, and will be reviewed only for an abuse of discretion.[27]

## III.    The Parties' Arguments

Capital Solutions asserts that amendment is proper under both the good cause standard of Rule 16(b)(4) and the liberal amendment standard of Rule 15(a)(2).  With respect to the Rule 16(b)(4) good cause standard, Capital Solutions states that it did not become fully aware of the facts necessary to assert its proposed new claims until after the September 1, 2008 amendment deadline. It contends that it learned for the first time that Konica *intentionally* withheld payments from Capital Solutions when Konica's corporate representative was deposed after the amendment deadline.  (It does not explain when this deposition took place, but only that it occurred some time after the amendment deadline.)  Capital Solutions states that the delay in deposing Konica's representative was due to its counsel accommodating defense counsel's schedule, and not any lack of diligence on its part.  Capital Solutions also states that the good cause standard has been satisfied because it was not until *after* the amendment deadline that Konica paid several hundred thousand dollars to Bank of Oklahoma, which Capital Solutions claims is further evidence that Konica has acted intentionally.

Capital Solutions contends that Defendants will not be prejudiced by the amendment because at the time the Motion to Amend was filed — on October 9, 2008 — Defendants had yet to take any depositions.  For these reasons, it contends that it has met the "due diligence" standard of Rule 16(b)(4).

---

[27]*Ingle v. Dryer*, No. 07-cv-00428-LTB-CBS, 2008 WL 1744337, at *2 (D. Colo. Apr. 11, 2008) (citing *Burks v. Okla. Publ. Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996)).

It also asserts that amendment is proper under Rule 15(a)(2) because none of the factors militating against amendment, such as bad faith, dilatory motive, failure to cure deficiencies by previous amendments, or futility of amendment, are present here.

Konica and Bank of Oklahoma oppose the proposed amendments. Konica argues that, with the exception of Capital Solutions' new allegations of conversion, the proposed new causes of action are not based upon any new factual allegations and "are merely derivations of its existing claims of fraud and negligence."[28] In addition, it argues that allowing many of the proposed amendments would be futile, as they are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because they do not state a claim for relief and/or are the same claims that the Court dismissed in its July 14, 2008 Order. Bank of Oklahoma makes similar arguments as to the particular allegations asserted against it.

## IV.    Analysis

### A.    Has Capital Solutions Established "Good Cause" Within the Meaning of Rule 16(b)(4) to Allow the Amendments Out of Time?

As noted above, when a party moves to amend beyond the Scheduling Order deadline for filing such a motion, the moving party must establish good cause for filing its motion to amend out of time.[29] To establish good cause, the moving party must show that the deadline could not have been met even if it had acted "with due diligence."[30]

---

[28]Konica's Mem. in Opp'n to Mot. to Amend (doc. 91) at 4

[29]*See, supra*, note 23.

[30]*Boatright,* 2007 Wl 2693674, at *5; *accord Lone Star Steakhouse*, 2003 WL 21659663, at *2 (party moving to amend after the scheduling order deadline "must show that despite due diligence it could not have reasonably met the scheduled deadlines."); *Deghand*, 904 F.Supp. at 1221 (the moving party "must show that despite due diligence it could not have reasonably met the scheduled deadlines.").

Here, the motion to amend was filed more than five weeks after the Scheduling Order deadline.  Thus, Capital Solutions must demonstrate that it could not have met the September 1, 2009 deadline even if it had acted with due diligence.  The Court does not find that Capital Solutions has met this burden.  While Capital Solutions makes conclusory assertions about how it did not learn until after the amendment deadline that Konica had acted intentionally, it fails to explain how the alleged intentional nature of Konica's actions gives rise to the new allegations and causes of action pled in the proposed amendment.  Moreover, the Court is not persuaded by Capital Solutions' argument that Defendants will not be prejudiced because they had not taken any depositions at the time the Motion to Amend was filed.  It is well settled that the lack of prejudice to the nonmovant does not show "good cause" within the meaning of Rule 16(b)(4).[31]

In sum, the Court does not find that Capital Solutions has met its burden to demonstrate good cause for filing its Motion to Amend more than a month after the amendment deadline.  The Motion to Amend is therefore denied on that basis.

## B.      Are the Proposed Amendments Futile?

Even if the Court were to find that Capital Solutions had established good cause for allowing the amendments out of time, the Court would deny the motion as to a significant number of the new claims on the basis of futility.   As noted above, a proposed amendment is futile if the amended claim would be subject to dismissal.[32]  The burden is on the parties asserting that the proposed claim

---

[31]*Lone Star Steakhouse,* 2003 WL 21659663, at *2; *Deghand*, 904 F. Supp. at 1221 (citations omitted).

[32]*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (citing *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006)).

is futile — in this case Konica and Bank of Oklahoma — to establish the futility of the proposed amendments.[33]

In determining whether amendment should be denied as futile, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[34]  In doing so, the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party, in this case, Capital Solutions.[35]  The court must then look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.[36]  Thus, in this case, the Court may find Capital Solutions' proposed amended claims futile if, viewing the well-pleaded factual allegations in the proposed Second Amended Complaint as true and in the light most favorable to Capital Solutions, the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law.[37]

### 1.    Proposed amended Count V: Fraud against Konica

Capital Solutions has added five new paragraphs to its fraud claim (Count V)[38] in an apparent attempt to plead the alleged fraud with more particularity.  None of those new allegations, however, satisfy the Rule 9(b) standard for pleading fraud with particularity.  As the Court's July 14, 2008 Order dismissing the fraudulent inducement allegations explained, Rule 9(b) requires that any

---

[33]*Pekareck v. Sunbeam Prods.*, No. 06-1026-WEB, 2006 WL 1313382, at *1 (D. Kan. May 12, 2006).

[34]*See Anderson*, 499 F.3d at 1238.

[35]*Id.* at 1232 (citation omitted).

[36]*Id.* (citations omitted).

[37]*See id.*

[38]*See* Proposed Second Am. Compl., ¶¶ 61-66.

complaint alleging fraud "'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[39]  "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud."[40]  The purpose behind Rule 9(b) is to give the defendant fair notice of the plaintiff's claims and the specific factual grounds upon which they are based so that the defendant may prepare an adequate responsive pleading.[41]

Admittedly, Rule 9(b) is often applied more liberally to fraud by silence (sometimes called "fraudulent concealment" claims[42]) than it is applied to other fraud claims involving affirmative misrepresentations or actions.[43]  Because a fraud by silence claim does not involve an affirmative misrepresentation, it typically does not occur at a specific place or precise time nor does it usually involve specific persons.[44]  Thus, a plaintiff asserting fraud by silence is typically not required to identify the particular person who failed to disclose the material fact, because "[i]t would not serve Rule 9(b)'s purposes to compel [p]laintiffs to speculate about the specific individual who should

---

[39]*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)); *accord Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997).

[40]*Plastic Packaging Corp. v. Sun Chem. Corp.,* 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) (citations omitted).

[41]*Schwartz*, 124 F.3d at 1252 (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)).

[42]Under Kansas law, "fraud by silence" and "fraudulent concealment" are different names for the same cause of action.  *Larson v. Safeguard Props., Inc.*, 379 F. Supp. 2d 1149, 1152 (D. Kan. 2005) (citing *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906 (10th Cir. 2005)).

[43]*See, e.g., Bishop v. Shell Oil Co.*, No. 07-2832, 2008 WL 57833, at *1-2 (E.D. La. Jan. 3, 2008) (applying a "more relaxed pleading standard" to fraud by silence claims); *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988) (applying lesser standard to "malicious silence" fraud claim because it is "by its very nature, difficult to plead with particularity").

[44]*Bishop*, 2008 WL 57833, at *1.

have made disclosures of material fact."[45]  Nonetheless, a plaintiff alleging fraud by silence ought

to be able to identify the facts that it claims were not disclosed, and, thus, most courts require the

plaintiff to plead with specificity the material facts that it claims the defendant wrongfully failed to

disclose.[46] Courts will also require the plaintiff to allege the general time period during which the

facts were withheld.[47]

Here, Capital Solutions merely alleges that Konica failed to communicate "material facts

regarding payments received and balances due."[48] The Court finds this allegation is not specific

enough to apprise Konica of the nature of the fraud and to allow it to frame an appropriate response.

Also, Capital Solutions fails to identify the time period during which Konica wrongfully withheld

the material facts from Capital Solutions.  Thus, the Court holds that Capital Solutions' proposed

new fraud by silence allegations have not been pled with the specificity required by Rule 9(b) and

are therefore subject to dismissal.[49]  Accordingly, the Court finds that allowing Capital Solutions

---

[45]*Larson*, 379 F.Supp. 2d at 1153.

[46]*See, e.g., Bishop,* 2008 WL 57833, at * 2 (plaintiff alleging fraud by silence must allege with reasonable particularity the information that was withheld); *Bear Hollow, L.L.C. v. Moberk, L.L.C.*, No. 5:05CV210, 2006 WL 1642126, at *5 (W.D. N.C. June 5, 2006) (fraud by silence plaintiff must allege with reasonable particularity "the general content of the information that was withheld and the reason for its materiality"); *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 598 (E.D. La. 1993) (fraud by silence plaintiff must allege with reasonable particularity the statements or information withheld).

[47]*Bishop*, 2008 WL 57833, at *2 (fraud by silence plaintiff must allege "the general time period" during which the fraud by silence occurred); *Bear Hollow*, 2006 WL 1642126, at *5 (plaintiff must allege the "general time period over which . . . the fraudulent conduct occurred").

[48]Proposed Second Am. Compl., ¶¶ 61-64.

[49]The failure to sufficiently plead any essential element of fraudulent concealment may result in dismissal of the claim. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (involving failure to sufficiently plead fifth element of fraudulent concealment under Colorado law).

leave to amend to add its fraud by silence claims would be futile.  This is an additional basis for denying Capital Solutions leave to amend.

        2.     *Proposed amended Count VI:  Negligence & negligent misrepresentation against Konica*

Proposed Amended Count VI contains allegations of negligence and negligent misrepresentation.  The majority of allegations in proposed amended Count VI are for negligence and were taken verbatim from Capital Solutions' First Amended Complaint.  Those allegations assert that  Konica owed Capital Solutions a duty to collect, remit and account for payments due Capital Solutions from Capital Solutions' customers,  and that Konica "failed to exercise ordinary care to collect, remit and account for those payments."[50]  This is the very same set of allegations that the Court dismissed in its July 14, 2008 Order for failure to state claim based on Capital Solutions' failure to allege any legal duty independent of the parties' contractual relationship that would support tort liability for negligence.[51]  Because these allegations are clearly subject to dismissal, leave to amend to add them must be denied.

To the extent Capital Solutions has included new allegations in Count VI in an attempt to plead a new and different cause of action for negligent misrepresentation, the Court finds those allegations would also be subject to dismissal.  The new negligent misrepresentation allegations are still predicated on Konica's alleged contractual duty to bill Capital Solutions' customers, collect amounts due from those customers, and timely remit those payments to Capital Solutions.[52]  Thus, even though a portion of Capital Solution's proposed Count VI is couched in terms of "negligent

---

[50]Proposed Second Am. Compl., ¶69.

[51]*See* July 14, 2008 Mem. and Order (doc. 63) at 11.

[52]*See* Count III, First Am. Compl., ¶¶ 34-37.

misrepresentation" instead of "negligence," it is still based on the alleged contractual duty. Because Capital Solutions has not shown the required independent basis for any tort liability, the Court finds that these allegations are subject to dismissal.

In light of the foregoing, proposed Count VI would be subject to dismissal in its entirety. Leave to amend to allege proposed Count VI should therefore be denied on the basis of futility.

3.     *Proposed amended Count VII: Breach of fiduciary duty and good faith, and conversion against Bank of Oklahoma*

In its August 11, 2008 Order on Bank of Oklahoma's Motion to Dismiss, the Court dismissed Capital Solutions' claim for breach of the implied duty of good faith.[53] Thus, the Court agrees with Bank of Oklahoma that Capital Solutions should not be allowed to amend its Complaint to plead the same "good faith claim" and to assert in proposed Paragraph 75 that Bank of Oklahoma has "refused to cooperate in the closing of certain loans involving Southwinds" and that "[s]uch actions were in fad faith and constituted an interference with Plaintiff's business."[54]

The Court also agrees that Capital Solutions should be denied leave to assert in proposed Paragraph 74 that throughout the parties' relationship, Bank of Oklahoma "has continually tied the two loans together."[55] This is an allegation relevant only to Capital Solutions' claim for violation of the anti-tying provisions of 12 U.S.C. § 1972, which the Court dismissed in its August 11, 2008 Order.[56]

---

[53] *See* August 11, 2008 Mem. and Order (doc. 69) at 12.

[54] Proposed Second Am. Compl., ¶ 75.

[55] *Id.*, ¶ 74.

[56] *See* August 11, 2008 Mem. and Order (doc. 69) at 12-14.

4.    *Proposed claim for punitive damages against Bank of America*

In Paragraphs 78 and 79 of Count VII of the Proposed Second Amended Complaint, Capital Solutions asserts claims for various damages it contends it is entitled to recover against Bank of Oklahoma.  Paragraph 78 states that "[a]s a direct and proximate result of the aforesaid fault of [Bank of Oklahoma], Plaintiff incurred unnecessary fees, unnecessary interest, loss of business expectancies, profits, and a loss of value in the collateral."[57]  Capital Solutions then states in Paragraph 79 that "Plaintiff is also entitled to recover punitive damages."[58]

Bank of Oklahoma argues that amendment to add a claim for punitive damages would be futile because Capital Solutions does not allege any cause of action against it that would give rise to a claim for punitive damages.  Bank of Oklahoma asserts that no cause of action pled in Count VII (with the possible exception of violation of the anti-tying statue, which the Court dismissed) allows for the recovery of punitive damages.  Bank of Oklahoma also argues that Capital Solutions has failed to comply with Rule 9(g) in asserting its claims for punitive damages.

The Court disagrees with Bank of Oklahoma to the extent it argues that Capital Solutions has not asserted any cause of action, other than its dismissed claim for violation of the anti-tying statute, that could give rise to liability for punitive damages.  Under Kansas law, a plaintiff may, in certain circumstances recover punitive damages for conversion.[59]  The Kansas Supreme Court has held that a plaintiff may recover punitive damages for conversion where it demonstrates that the defendant, when committing the tort of conversion, acted with "malice, ill will, a conscious

---

[57]Proposed Second Am. Compl., ¶ 78.

[58]*Id.*, ¶ 79.

[59]*See, e.g.*, *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 183 F. Supp. 2d 1318, 1322 (D. Kan. 2002) (awarding punitive damages on conversion claim brought under Kansas law); *Mohr v. State Bank of Stanley*, 241 Kan. 42, 56, 734 P.2d 1071 (1987).

indifference to the rights of others, or a reckless disregard thereof."[60]  In addition, under Kansas law,

punitive damages may be awarded for breach of fiduciary duty.[61]  To recover punitive damages for

breach of fiduciary duty, the plaintiff must establish that the defendant, in breaching its fiduciary

duty, acted with willful or wanton conduct, fraud or malice.[62]

Capital Solutions asserts causes of action for both conversion and breach of fiduciary duty

against Bank of Oklahoma.   Thus, Capital Solutions has pled causes of actions that could

conceivably allow it to recover punitive damages.  Merely asserting those causes of action, however,

is not sufficient to plead a claim for punitive damages.

As Bank of Oklahoma point out, Federal Rule of Civil Procedure 9(g) requires Capital

Solutions to specifically plead all special damages, including punitive damages.  Rule 9(g) provides

that "[i]f an item of special damage is claimed, it must be specifically stated."[63]  Judges in this

district "have repeatedly found that Fed. R. Civ. P. 9(g) governs the pleading of punitive damages"

in diversity cases filed in this district.[64]  Thus, Capital Solutions must, at a minimum, allege the

---

[60]*Mohr,* 241 Kan. at 56 (internal quotations and citation omitted).

[61]*Mynatt v. Collis*, 274 Kan. 850, 883, 57 P.3d 513 (2002).

[62]*Id.* (citations omitted).

[63]Fed. R. Civ. P. 9(g)

[64]*Schnuelle v. C & C Auto Sales, Inc.*, 99 F. Supp. 2d 1294, 1299 (D. Kan. 2000) (citing *Baumann v. Hall*, No. 98-2126-JWL, 1998 WL 513008 (D. Kan. July 15, 1998); *Whittenburg v. L.J. Holding Co.*, 830 F.Supp. 557 (D. Kan. 1993); *Heil v. Scholastic Book Fairs, Inc.*, No. 96-2514-GTV, 1997 WL 222407, at *1 (D. Kan.  Apr. 21, 1997)).  *See also Hinson v. Titan Tool, Inc.*, No. 93-1370-FGT, 1996 WL 473873, at *2 (D. Kan. May 31, 1996) ("Rule 9(g) applies in diversity cases brought under Kansas tort law."); *Comeau v. Rupp*, 762 F. Supp. 1434, 1449 (D. Kan. 1991) (denying motion to strike punitive damages claim after finding plaintiffs had complied with Rule 9(g) in pleading the claim).

circumstances upon which the punitive damages claim is made.[65]  In other words, Capital Solutions must allege that Bank of Oklahoma, in allegedly converting Capital Solutions' property or in allegedly breaching its fiduciary duty, acted willfully, wantonly, fraudulently, maliciously, with ill will, with a conscious indifference to the rights of others, or in reckless disregard of others' rights. Proposed amended Count VII fails to make any such allegations.  The Court therefore holds that Capital Solutions' proposed Second Amended Complaint fails to state a claim for punitive damages against Bank of Oklahoma, and that amendment would therefore be futile.

5.   <em>Claims for attorney's fees against Konica and Bank of Oklahoma</em>

Both Konica and Bank of Oklahoma argue that Capital Solutions should not be allowed to assert claims for attorney's fees against them because Capital Solutions has not pled any statutory or contractual basis for recovering them.  Konica notes that Capital Solutions has pled claims for attorney's fees against it in proposed Counts II-VI, as well as the final "Wherefore" Clause.  Capital Solutions has also asserted a claim for attorney's fees against Bank of Oklahoma in proposed Count VII.

Konica and Bank of Oklahoma fail to note that Capital Solutions asserted the very same claims for attorney's fees against them in its First Amended Complaint,[66] and neither party addressed the attorney's fees claims in their prior motions to dismiss.  Thus, these are not *new* claims and are not, in and of themselves, grounds for denying Capital Solutions leave to amend.

---

[65]*See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1311 (3d ed. 2004) at 357 ("[U]nder the more recent decisions interpreting Rule 9(g), the plaintiff must present the circumstances giving rise to the special damages and the elements of injury the plaintiff allegedly suffered . . . .").

[66]First. Am. Compl. (doc. 21), ¶¶ Counts II, III, IV, V, VI, and final "Wherefore Clause."

6.      *Appointment of a receiver*

In the final "Wherefore Clause" of the proposed Second Amended Complaint, Capital Solutions requests that a receiver be appointed.[67]  This is the only mention of a receiver in the entire proposed Second Amended Complaint.

Receivership is "an extraordinary equitable remedy that lies in the discretion of the court, justifiable only in extreme situations."[68]  Factors typically influencing the district court's exercise of discretion include:  (1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more good than harm.[69]

In this case, Capital Solutions fails to allege any reasons, let alone any compelling equitable reasons or extreme circumstances, such as imminent danger that its property will be lost, concealed or diminished in value, which would warrant the appointment of a receiver.  The Court thus holds that Capital Solutions has failed to plead a claim for the appointment of a receiver, and amendment to allow for the appointment of a receiver should be denied.

---

[67]Capital Solutions states: "WHEREFORE, Plaintiff Capital Solutions prays for judgment against Defendants in excess of $75,000.00, for the full amount of payments and fees due it, for appropriate compensatory and punitive damages, *for an appointment of a receiver*, along with pre-judgment interest, attorney's fees, and for other such relief as the Court deems just and proper." Proposed Second Am. Compl, attached as Ex. 1 to Mot.  to Amend (doc. 87), at 12-13 (emphasis added).

[68]*Waag v. Hamm*, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1998)  (citations omitted); *accord Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) (Appointment of a  receiver "is an extraordinary equitable remedy that is only justified in extreme situations.")

[69]*Aviation Supply Corp.*, 999 F.2d at 316-317 (citations omitted).

20

7.      *Prejudgment Interest*

Finally, Bank of Oklahoma asserts that leave to amend to add a claim for prejudgment interest should be denied because prejudgment interest is allowed under Kansas law only on liquidated claims,[70] and no liquidated claims have been asserted against Bank of Oklahoma.  Bank of Oklahoma states that Capital Solutions has asserted a claim for prejudgment interest in Paragraph 79 and the final "Wherefore Clause" of the proposed Second Amended Complaint.

Bank of Oklahoma is incorrect in asserting that Capital Solutions has added a claim for prejudgment interest in Paragraph 79 of its proposed Second Amended Complaint.  Nowhere in proposed Paragraph 79 does Capital Solutions make a claim for prejudgment interest.  Although it does make such a claim  in the final "Wherefore Clause" of the proposed Second Amended Complaint, that is the very same claim that was asserted in the First Amended Complaint.  Consequently, Capital Solutions is not moving to add a claim for prejudgment interest, and this is not a basis upon which the Court may deny leave to amend.

**V.      Conclusion**

In light of the foregoing, the Court holds that Capital Solutions' Motion to Amend should be denied because it was filed after the Scheduling Order deadline, and Capital Solutions has failed to show good cause for allowing the amendment out of time.  In addition, the Court holds that even under the liberal amendment standard of Rule 15(a)(2), allowing amendment to add many of the proposed claims would be futile because the claims are subject to dismissal.  For these reasons, the Motion to Amend is denied.

---

[70]Under Kansas law, prejudgment interest is not recoverable on unliquidated damages claims. *Schnuelle v. C & C Auto Sales, Inc.*, 99 F. Supp. 2d 1294, 1299 (D. Kan. 2000) (citing *Foster v. City of Augusta*, 174 Kan. 324, 332, 256 P.2d 121 (1953)).

**IT IS THEREFORE ORDERED** that Plaintiff Capital Solutions, L.L.C.'s Motion to Amend  (doc. 87) is denied for the reasons set forth herein.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 11th day of June 2009.


s/David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:   All counsel and *pro se* parties