# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CAPITAL SOLUTIONS, LLC,**

     **Plaintiff,**

**v.**          **Case No. 08-2027-JWL-DJW**

**KONICA MINOLTA BUSINESS
SOLUTIONS U.S.A., INC., et al.,**

     **Defendants.**

_____

**BANK OF OKLAHOMA, N.A.,
a/k/a BANK OF OKLAHOMA
NATIONAL ASSOCIATION,**

     **Plaintiff,**

**v.**          **Case No. 08-2191-JWL-DJW**

**CAPITAL SOLUTIONS, LLC, et al.,**

     **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

These two cases, which have been consolidated for pretrial proceedings, are before the Court on the parties' objections to the proposed Pretrial Order. The Pretrial Conference was held on September 21, 2009, and the parties submitted a joint proposed Pretrial Order prior to the Pretrial Conference. A single Pretrial Order was submitted for both cases. Bank of Oklahoma, N.A. ("BOK") and Konica Minolta Business Solutions U.S.A., Inc. ("KMBS") asserted objections to certain items being included in the Pretrial Order. Those objections, which pertain to Case No. 08-2027-JWL-DJW, are as follows:

  1.  KMBS objected to BOK's inclusion of a tortious interference cross-claim against KMBS;

2. BOK objected to KMBS's inclusion of a "Legal Issue" regarding BOK owing a duty to KMBS; and

3. BOK objected to KMBS's inclusion of accrued administrative expenses as an element of KMBS's damages.

Immediately following the Pretrial Conference, the Court entered an Order directing BOK and KMBS to file responses to the objections.[1] The Court has reviewed the objections and responses, and is now prepared to rule on the objections.

## I. Background Information

Plaintiff Capital Solutions, LLC ("Capital Solutions") filed Case No. 08-2027-JWL-DJW against KMBS on January 11, 2008, asserting claims against KMBS for an accounting, breach of fiduciary duty, breach of contract, tortious interference with business relations, fraud, and negligence.[2] On April 17, 2008, Capital Solutions filed an Amended Complaint, joining BOK as a defendant.[3] Capital Solutions sued BOK for negligence, breach of fiduciary duty and good faith, conversion, and violation of 12 U.S.C. § 1972.[4] On August 25, 2008, BOK filed an Answer to the Amended Complaint, a Counterclaim against Capital Solutions, and a Cross-Claim against KMBS, all of which are contained in the same pleading.[5] That pleading is entitled "Defendant Bank of

---

[1]*See* Sept. 21, 2009 Order (doc. 163).

[2]*See* Compl. (doc. 1).

[3]*See* Am. Compl. (doc. 21).

[4]*See id.*, Count VII.

[5]*See* Original Answer and Affirmative Defenses, Countercl. and Cross-Claim to Plaintiff's Am. Compl. (doc. 75).

Oklahoma's Original Answer and Affirmative Defenses, Counterclaim and Cross-Claim to Plaintiff's Amended Complaint."[6]

The Counterclaim and Cross-Claim are set out in their own portion of the pleading.[7] Sections A-D set forth allegations common to both the Counterclaim and Cross-Claim, such as allegations pertaining to the parties, jurisdiction, and venue.[8] Section E sets forth "Allegations Common to All counts in the Counterclaim and Cross-Claim."[9] Sections F-M contain the various Counterclaims asserted against Capital Solutions and are labeled Counts I-IX.[10] Section N contains a prayer for relief against Capital Solutions on the Counterclaims.[11]

Section O contains the Cross-Claim against KMBS. It is entitled "Count I – Conversion."[12] There are no other enumerated counts filed against KMBS. However, one additional section, Section P, follows Count I and is entitled "Declaratory Judgment Against CSL and KMBS to Confirm Priority of BOK's Security Interest."[13] It contains a subsection entitled "Application for Order to Enjoin Sale or Conversion of Assets Covered by Security Agreement."[14] In Section P, BOK seeks a declaratory judgment against Capital Solutions and KMBS to confirm priority of

---

[6]*Id*., Cross-Claim, Count I.

[7]*Id*. at 24-44.

[8]*Id*. at 24-26.

[9]*Id*. at 26-28.

[10]*Id*. at 28-36.

[11]*Id*. at 36-38.

[12]*Id*. at 38-39.

[13]*Id*. at 39-44.

[14]*Id*. at 41-43.

BOK's security interest.[15]  BOK also seeks a temporary restraining order and injunction restraining Capital Solutions and KMBS from disposing of any of the personal property listed in the security agreements and an inventory and accounting of all property listed in the security agreements.[16]

BOK's Cross-Claim against KMBS alleges as follows:

## CROSS CLAIM AS TO KMBS

## O.  COUNT I --- CONVERSION

COMES NOW BOK, and for Count I of its Cross Claim against KMBS, states the following cause of action:

83.    BOK incorporates by reference each and every allegation set forth in the paragraphs 1 through 82 herein.

84.    On or around April 13, 2006, [Capital Solutions] gave its promissory notes to BOK, a copy of which is attached hereto as Exhibit "A-7" through "A-9" and incorporated herein by reference.

85.    There is still due and owing on the three promissory notes unpaid principle [sic] in the amount of $4,199,922.37, interest in the amount of $194,768.59, plus interest accruing at the per diem rates set forth above on the three promissory notes, from and after April 24, 2008.

86.    To secure payment of the notes, [Capital Solutions] executed a security agreement and assignment of the accounts receivable, including any existing or future lease payments in favor of BOK, a copy of which is marked Ex. "A-2", attached hereto and incorporated by reference.

87.    Upon information and belief and as alleged by [Capital Solutions], subsequent to the above mentioned assignment there existed an understanding or an agreement between [Capital Solutions] and KMBS, under the terms of which KMBS was to collect lease payments on equipment financed by [Capital solutions] and funded by BOK.

88.    [Capital Solutions] and BOK notified KMBS to remit all lease payments and fees, directly to BOK.

---

[15]*Id*. at 41, Wherefore Clause.

[16]*Id*. at 43, ¶¶ 114-115.

89.     BOK had the right to receive the lease payments.

90.     KMBS has retained the lease payments for its own benefit and has interfered with BOK's right to receive the lease payments.

91.     BOK has made a demand to receive the lease payments from KMBS.

92.     As to any disbursements, BOK alleges that KMBS improperly disbursed those funds to parties other than BOK and/or has withheld disbursement of said funds, and is therefore, to the extent of BOK's damages, liable to BOK to the extent of the wrongful disbursements and/or withheld disbursements.

        WHEREFORE BOK demands judgment for the amount of the improperly disbursed and/or withheld funds, plus interest and costs against KMBS to the extent of any wrongful disbursements and/or withheld disbursements, as set forth above, which were not made to BOK.[17]

The term "tortious interference" is not used anywhere in the Cross-Claim, or for that matter, anywhere in BOK's "Original Answer and Affirmative Defenses, Counterclaim and Cross Claim to Plaintiff's Amended Complaint."

The deadline for filing motions to amend was September 1, 2008.[18] On September 14, 2009, the parties submitted the joint proposed Pretrial Order to the Court, in which BOK asserted a cross-claim for tortious interference against KMBS.  KMBS maintains that inclusion of this claim in the proposed Pretrial Order was the first notice KMBS had received that BOK was suing it for tortious interference.

---

[17]*Id.*, Cross-Claim, Count I.

[18]*See* July 15, 2008 Scheduling Order (doc. 54), ¶ 3.a.

## II.    Discussion

### A.    Should BOK Be Allowed to Assert in the Pretrial Order a Tortious Interference Cross-Claim Against KMBS?

#### 1.    *The tortious interference claim as pled in the proposed Pretrial Order*

In Section 6 of the parties' proposed Pretrial Order, BOK asserts the following "theory of recovery" against KMBS:

> [KMBS] has wrongfully converted and interfered with its entitlement to lease payments and with BOK's secured collateral, including all revenues and rights derived under the leases, without proper justification. [KMBS] has, thereby, wrongfully interfered with BOK's relationship with [Capital Solutions]. BOK is entitled to relief against [KMBS] declaring its lien a first priority and enjoining [KMBS] from selling or otherwise converting the collateral set forth in the Security Agreements, and to foreclose its security interests."[19]

In the "Essential Elements" section of the proposed Pretrial Order, BOK also sets out essential elements for, *inter alia*, its tortious interference cross-claim against KMBS.[20]

#### 2.    *KMBS' objections and the parties' arguments*

KMBS objected in the "Theories of Recovery" section of the Pretrial Order that "BOK has added a non-pleaded claim of tortious interference . . . ."[21]  It also noted its objection in the "Defenses" section of the Pretrial Order, where it stated that BOK "did not assert a claim for tortious

---

[19]Proposed Pretrial Order, § 6 at 18.

[20]*Id.*, § 6 at 22-23.  BOK states the elements are as follows:  "BOK has the burden to establish (1) the Loan Documents were valid and enforceable contacts; (2) [KMBS] was aware of the Loan Documents and the banking relationship between BOK and [Capital Solutions]; (3) [KMBS] intentionally procured [Capital Solutions'] breach of the Loan Documents; (4) [KMBS] was without justification; and (5) BOK suffered damages as a result therefrom."  The proposed Pretrial Order defines the term "Loan Documents" as "the Loan Agreement, the [promissory] Notes, the security interest and financing statements, the Interest Rate Swap Agreement, and all related credit agreements between BOK and [Capital Solutions]."  Proposed Pretrial Order, § 5 at 15.

[21]*Id.*, § 6 at 17.

interference."[22]  KMBS also raised it in the "Legal Issues" section, where it stated the following

issue: "Whether BOK may assert a claim against KMBS for tortious interference."[23]

BOK argues that it should be allowed to include a claim for tortious interference against

KMBS in the Pretrial Order because:  (1) BOK alleged sufficient facts in its Cross-Claim to support

a tortious interference claim; (2) KMBS is already defending itself against a tortious interference

claim filed by Capital Solutions; (3) BOK "has de facto pursued the claim against KMBS during the

course of this litigation";[24] and BOK's expert witness' report put KMBS on notice that it was

pursuing such a claim.   In light of the foregoing, BOK contends that KMBS cannot establish

surprise or prejudice by the inclusion of the claim in the Pretrial Order.

BOK contends that its Cross-Claim alleged the following facts which support each element

of its claim of tortious interference with BOK and Capital Solutions' "contractual relationship."[25]

The first element, that of knowledge of the contract between BOK and Solutions was satisfied by

the allegations that "there existed an understanding or an agreement between [Capital Solutions] and

KMBS, under the terms of which KMBS was to collect lease payments on equipment financed by

[Capital Solutions] and funded by BOK"[26] and that "KMBS has acknowledged through counsel that

it received instruction from [Capital Solutions] on or around June 2007, to collect, hold and to send

---

[22]*Id.*, § 7(ii) at 25-26.

[23]*Id.*, § 9(16) at 36.

[24]BOK's Resp. to KMBS Objection to the Inclusion in the Pretrial Order of BOK's Claim of Tortuous [sic] Interference (doc. 168) at 3.

[25]*Id.* at 6.

[26]Cross-Claim, ¶ 87.

the lease payments received from [Capital Solution's] customers directly to BOK."[27] Despite the

fact that a tortious interference legal theory was never set out in the Cross-Claim, BOK argues that

these factual allegations should have placed KMBS on notice that it was being sued by BOK for

tortious interference.

KMBS opposes the inclusion of the tortious interference claim, arguing that the allegations

BOK points to are not sufficient to state a claim for tortious interference against KMBS and were

not sufficient to place KMBS on notice that it was being sued for tortious interference. Furthermore,

KMBS disputes that BOK has "de facto" pursued any such claim against it. KMBS further argues

that the tortious interference claim that *Capital Solutions* has asserted against KMBS from the

beginning of this lawsuit has no connection with *BOK's* attempt to assert a tortious interference

claims against KMBS. Finally, it argues that BOK's attempt to include this claim should be denied

as an untimely motion to amend.

### 3. Analysis

The Court's analysis is two-fold: First, should the Court construe BOK's Cross-Claim as

asserting a cause of action for tortious interference against KMBS? If so, the claim should be

included in the Pretrial Order. If not, then the Court must decide whether BOK should be allowed

to amend its Cross-Claim to add a claim for tortious interference.

### a. Should the Court construe the Cross-Claim as pleading a claim for tortious interference?

To determine whether BOK had already pled a claim for tortious interference in its Cross-

Claim, the Court must consider whether BOK complied with the "general rules of pleading," which

are set forth in Federal Rule of Civil Procedure 8(a). Rule 8(a) provides as follows:

---

[27]*Id.*, ¶ 23.

A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.[28]

These requirements ensure that the complaint gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,[29] which in turn allows the opposing party to frame its response to the complaint, counterclaim, or cross-claim.[30] These pleading requirements also serve to "apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief."[31] The Supreme Court has observed that under the federal rules, "liberal discovery procedures and summary judgment help 'to define disputed facts and issues and to dispose of unmeritorious claims,' while the 'simplified notice pleading standard' merely represents the first step in a system 'adopted to focus litigation on the merits of a claim.'"[32]

To satisfy notice pleading requirements, Rule 8(a) does not require a plaintiff to allege detailed facts that establish its right to judgment.[33] Rather, the plaintiff "must set forth factual

---

[28]Fed. R. Civ. P. 8(a).

[29]*Zokari v. Gates*, 561 F.3d 1076, 1084 (10th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Res. Ctr. for Indep. Living, Inc. v. Ability Res., Inc.*, 534 F. Supp. 2d 1204, 1208 (D. Kan. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

[30]*Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989) (citing *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)).

[31]*Id. (quoting Perington*, 631 F.2d at 1371); *Res. Ctr.,*534 F. Supp. 2d at 1208.

[32]*Res. Ctr.*, 534 F. Supp. 2d at 1208 (quoting *Swierkiewicz,* 534 U.S. at 512-14).

[33]*Id.* at 1212 (citing *Blackwell v. Harris Chem. N. Am. Inc.*, 11 F. Supp. 2d 1302, 1307 (D.
(continued...)

allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."[34] Furthermore, Rule 8(e) states that "[p]leadings must be construed so as to do justice."[35]

The Tenth Circuit has stated that "[a]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover."[36] In other words, if factual allegations are pled that are sufficient to state a claim for relief, the plaintiff is not required to identify the particular legal theory under which it seeks relief. At the same time, however, the Tenth Circuit has held that a late shift in the focus or theory of the case should not be allowed if it prejudices the other party's ability to defend the action on the merits.[37] Moreover, "the liberalized pleading rules [do not] permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case."[38] Allowing this practice "would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately

[33](...continued)
Kan. 1998); *Trevino v. Union Pac. R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990)).

[34]*Res. Ctr.*, 534 F. Supp. 2d at 1212 (citing *Nwakpuda v. Falley's Inc*., 14 F. Supp. 2d 1213, 1216 (D. Kan. 1998); *Tate v. Quiktrip Corp*., No. 08-1268-JTM, 2009 WL 211920, at *2 (D. Kan., Jan. 27, 2009) (citing same); *see also Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 602 (D. Kan. 2008) (Rule 8(a) "requires minimal factual allegations on those material elements that must be proved to recover on each claim.").

[35]Fed. R. Civ. P. 8(e).

[36]*Zokari*, 561 F.3d at 1087 (quoting *Evans v. McDonald's Corp*., 936 F.2d 1087, 1090 (10th Cir. 1991).

[37]*Id.*; *Evans*, 936 F.2d at 1090-91.

[38]*Evans*, 936 F.2d at 1091.

unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances."[39]

In a recent decision, *Zokari v. Gates*,[40] the Tenth Circuit held that "the status of the litigation" should factor into how expansively the court should construe the allegations of a complaint.[41] In *Zokari*, the proposed pretrial order included a failure to pay claim.[42] The defendant filed a motion *in limine* to exclude from trial any evidence regarding the defendant's alleged failure to pay the plaintiff wages, asserting that no such theory has been pled in the amended complaint.[43] The district court granted the motion, holding that the amended complaint asserted only employment discrimination claims and no Fair Labor Standards Act claim, and, thus, no wage claim could be asserted in the pretrial order.[44] The plaintiff appealed, and the Tenth Circuit upheld the district court's decision. In so ruling, the Tenth Circuit held:

> In short, it would be a stretch to construe Mr. Zokari's amended complaint as putting DCAA on notice of a wage-law claim. To be sure, courts often, and properly, engage in such a stretch. But whether or not to do so should depend on the status of the litigation. A decision that "do[ing] justice," Fed. R. Civ. P. 8(e), requires an expansive construction of a complaint will turn on the fairness to the parties and the burdens on the court that would result from giving a pleading a possible, but improbable, reading. Early in litigation, justice is usually served by expansively construing complaints. For example, if DCAA had initially responded to the complaint by moving to dismiss because Mr. Zokari had not properly exhausted administrative remedies, and if Mr. Zokari had replied that this ground for dismissal did not apply to his wage-law claim, then the district court would have been

---

[39]*Id*.

[40]561 F.3d 1076

[41]*Id*. at 1085-87.

[42]*Id*. at 1083.

[43]*Id*. at 1082.

[44]*Id*. at 1087.

well-advised to construe the complaint as raising such a wage-law claim. After all, the court would likely grant leave to amend the complaint to allege a wage claim unambiguously.[45]

The Tenth Circuit went on to reason that in other circumstances — when the case is in the later stages of the litigation — reading a complaint expansively could create injustice.[46] The court reviewed a number of prior decisions in which the Tenth Circuit refused to construe complaints to read into them new theories of recovery based on facts already pled in the complaints.[47] In those cases, the plaintiff attempted to assert the new theories "late in the game," for example, in the proposed pretrial order,[48] after the court had ruled on the defendant's summary judgment motion,[49] or in response to a motion for summary judgment.[50] The court in *Zokari* stated that "[i]mplicit in these decisions is that the original complaint needed to be amended — that is, the new theory of recovery was not raised by the original complaint even though the predicate facts were alleged."[51]

Applying this general principle to the facts before it, the Tenth Circuit in *Zokari* held that the district court "properly refused to construe the amended complaint so broadly as to include a

---

[45]*Id*. at 1085.

[46]*Id.*

[47]*Id*. at 1086-88.

[48]*See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1201 (10th Cir. 2006) (inclusion of product liability claim in the proposed pretrial order).

[49]*See Viernow v. Eurpides Dev. Corp.*, 157 F.3d 785, 799-800 (10th Cir. 1998) (leave to amend sought nineteen months after filing of the original complaint and after the district orally granted defendants' summary judgment motion).

[50]*See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (new theory presented in response to defendant's motion for summary judgment).

[51]*Zokari*, 561 F.3d at 1087.

wage-law claim."[52]  It further stated:  "As our precedents suggest, Mr. Zokari simply acted too late to burden the court and the defendant with a new theory for relief."[53]

Applying these principles to the case at bar, the Court declines to construe BOK's Cross-Claim as pleading a claim for tortious interference.  The Court does not agree with BOK that it has asserted sufficient allegations as to the predicate facts establishing a tortious interference claim.[54]  Even assuming *arguendo* that it had pled the predicate facts, it would stretch credulity for this Court to find that KMBS should have been able to string those factual allegations together from various paragraphs placed throughout the twenty-two pages of the combined Counterclaim and Cross-Claim to conclude that an unidentified legal theory, i.e., tortious interference, was being asserted against it.  This is particularly true since the Cross-Claim denominates *only a single count*, a claim for conversion, against KMBS.

Furthermore, the Court is not persuaded by BOK's argument that BOK's tortious interference claim should come as no surprise to KMBS because *Capital Solutions* is already suing KMBS for tortious interference.  As KMBS points out, Capital Solutions' tortious interference claim is based on KMBS' alleged interference with contracts existing between Capital Solutions and its customers,[55] and not with any contract existing between Capital Solutions and BOK.

_____

[52]*Id.*

[53]*Id.*

[54]A plaintiff must assert factual allegations regarding the following elements in order to plead a cause of action for tortious interference with contract under Kansas law:  (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge thereof; (3) the defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *MGP Ingredients, Inc. v. Mars, Inc.*, 465 F. Supp. 2d 1109,1112 (D. Kan. 2006) (quoting *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130 (2003)).

[55]*See* Am. Compl. (doc. 21), Count IV.   Paragraph 41 alleges that KMBS "inferfered with
(continued...)

Furthermore, the Court is not persuaded by BOK's argument that BOK's expert witness report should have put KMBS on notice that BOK was pursuing a tortious interference claim. The Court has reviewed Robert Eckholts's expert report, in which he opines that KMBS is a de facto custodian or collection agency for Capital Solutions, that KMBS was responsible for receiving and depositing Capital Solutions' lease revenues, and that KMBS allegedly failed to remit some of the leave payments to Capital Solutions does not in any way place KMBS on notice of a tortious interference claim by BOK.[56]  The Court fails to see how those opinions would lead KMBS to believe that it was being sued for tortious interference.

In addition, the Court finds no support in the record for BOK's argument that it "has de facto pursued the claim against KMBS" during the course of the lawsuit.[57]

Finally, the Court finds that BOK's position is belied by BOK's own characterization of its Cross-Claim against KMBS.  On August 11, 2009, BOK filed a Motion for Supplemental Relief, seeking leave to assert a claim for attorney's fees against KMBS on its Cross-Claim (doc. 155). BOK states in its Brief in Support of Motion for Supplemental Relief (doc. 156) that after BOK was served with Capital Solutions' Amended Complaint, "BOK filed an Answer, a Counterclaim against [Capital Solutions] and a *Cross-claim against KMBS, primarily for conversion by KMBS* of the lease

---

[55](...continued)
Plaintiff's relationships with its customers by failing to collect payments . . ." Similarly, Paragraph 42 alleges that KMBS "intentionally interfered with Plaintiff's contracts with its customers by inducing Plaintiff's customers to breach their contracts with Plaintiff and by seeking to enter into contracts with the customers itself."

[56]*See* Expert Report of Robert Eckholt, C.P.A., attached as Ex. A to BOK's Resp. to KMBS' Objections (doc. 168).

[57]*See* BOK's Resp. to KMBS' Objections (doc. 168) at 3.

payments due and owing [Capital Solutions] and BOK."[58]  Also in its reply brief in support of its

Motion for Supplemental Relief, BOK makes it clear that its only substantive claim for relief against

KMBS is for conversion.  It states:  "By filing this motion [for supplemental relief], BOK seeks to

supplement its prayer for relief under its *cause of action for conversion* against KMBS to recover

its ongoing damages . . . ."[59]  In neither of its briefs does BOK ever mention a cross-claim against

KMBS for tortious interference.

In sum, the Court holds that it would be unjust if, in the present context, it were to construe

BOK's Cross-Claim as providing notice to KMBS of a tortious interference claim.  Consistent with

*Zokari*, the Court finds that the time for liberally construing the Cross-Claim has long passed.  By

waiting until the Pretrial Order is due to pursue a claim for tortious interference, BOK simply acted

too late to burden the Court and KMBS with a new theory of relief.

> b.    *Should the Court grant BOK leave to amend to assert a tortious interference cross-claim?*

Having determined that BOK's Cross-Claim does not plead a claim for tortious interference,

the Court must now consider whether BOK should be granted leave to amend the Cross-Claim to

allege such a cause of action.  Pursuant to Federal Rule of Civil Procedure 15(a)(2), once a

responsive pleading has been filed, as in this case, "a party may amend its pleading only with the

opposing party's written consent or the court's leave."[60]  Rule 15(a)(2) specifies that the court

"should freely give leave when justice so requires."[61]  Nonetheless, a court may refuse to grant leave

---

[58]BOK's Brief in Supp. of Mot. for Supplemental Relief (doc. 156) at 2 (emphasis added).

[59]BOK's Reply in Supp. of Mot. for Supplemental Relief (doc. 161) at 3.

[60]Fed. R. Civ. P. 15(a)(2).

[61]*Id.*

to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[62]

When the deadline for amending pleadings set in the scheduling order has passed, as is the case here, Rule 15 is not the only rule to be considered. Federal Rule of Civil Procedure 16(b)(4) is also implicated. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[63] In *Minter v. Prime Equipment Co.*,[64] the Tenth Circuit expressly declined to "decide whether a party seeking to amend its pleadings after the scheduling order deadline must show 'good cause' for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements," as that issue was not argued by the parties.[65]

Prior to *Minter*, this Court applied a two-step analysis based on both Rule 16(b) and Rule 15(a) when faced with a request to amend a complaint past the scheduling order deadline.[66] This

---

[62]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

[63]Fed. R. Civ. P. 16(b)(4). In addition, the Scheduling Order in this case states that the schedule "shall not be modified except by leave of court upon a showing of good cause." Doc. 54 at 10.

[64]451 F.3d 1196 (10th Cir. 2006).

[65]*Id.* at 1205 n.4. *See also Bylin v. Billings*, 568 F.3d 1224, 1232 & n.10 (10th Cir. 2009) (declining to decide whether Rule 16(b)(4)'s more stringent standard applied to motion to amend filed after the dispositive motion deadline where issue was raised for the first time on appeal and stating: "Because we decline to consider the Bylins' Rule 16 argument, we leave for another day the question of whether this circuit should apply Rule 16 when a party seeks to amend a pleading after a court-imposed deadline."); *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) ("This court has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders.") (citing *Minter*, 451 F.3d at 1205 n.4).

[66]*See, e.g.*, *Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group*, No. 02-1185-
(continued...)

practice has continued in cases decided after *Minter.*[67] Thus, when amendment is sought beyond the

scheduling order deadline, this Court will first determine whether the moving party has established

"good cause" within the meaning of Rule 16(b)(4) so as to justify allowing the untimely amendment.

Only after determining that good cause has been established will the Court proceed to determine if

the more liberal Rule 15(a) standard for amendment has been satisfied.[68]

To establish good cause under Rule 16(b)(4), the moving party must show that the amendment

deadline could not have been met even if it had acted "with due diligence."[69] "Carelessness is not

---

[66](...continued)
WEB, 2003 WL 21659663, at *2 (D. Kan. Mar. 13, 2003) ("When a party seeks leave to amend after the deadline established in a pretrial scheduling order, however, that party must satisfy the standards set forth in Fed. R. Civ. P. 16(b), as well as Fed. R. Civ. P. 15(a)."); *Deghand v. Wal-Mart Stores, Inc.*, 904 F.Supp. 1218, 1221 (D. Kan. 1995) ("Because the plaintiff sought leave to amend her complaint after the deadline established in the pretrial scheduling order, Rule 16 of the Federal Rules of Civil Procedure is the plaintiff's first hurdle. . . . Rule 15 is the next hurdle for the plaintiff.").

[67]*See, e.g.*, *Oppenheimer & Co. v. Red Speedway, Inc.*, No. 06-2450-JTM, 2008 WL 4829894, at *2 (D. Kan. Nov. 5, 2008) ("[C]ourts in this jurisdiction consistently have held that, when considering a motion to amend filed after the date established in a scheduling order, the court must determine whether 'good cause' within the meaning of Fed. R. Civ. P. 16(b)(4) has been sufficiently demonstrated to justify allowing the untimely motion and if the Fed. R. Civ. P. 15(a) standards have been satisfied."); *Miller v. Union Pac. R.R.,* No. 06-2399-JAR-DJW, 2008 WL 4271906, at *2 (D. Kan. Sept. 12, 2008) (expressly noting that this Court continues to apply the two-step analysis based on Rule 16(b) and Rule 15(a) when a motion to amend is filed past the scheduling order deadline); *Boatright v. Larned State Hosp.*, No. 05-3183-JAR, 2007 WL 2693674, at *5 (D. Kan. Sept. 10, 2007) ("[C]ourts in the District of Kansas have routinely held that when considering a motion to amend filed after the deadline established in a scheduling order, the court must determine whether 'good cause' within the meaning of Fed. R. Civ. P. 16(b) has been sufficiently demonstrated to justify allowing the untimely motion and if the Fed. R. Civ. P. 15(a) standards have been satisfied.") (internal quotations and citations omitted).

[68]*See Boatright*, 2007 WL 2693674, at *6 (recognizing the Rule 15(a) standard as more lenient than the "good cause" standard of Rule 16(b)); *Geer v. Challenge Fin. Inv. Corp.*, No. 05-1109-JTM, 2007 WL 1149131, at *2 (D. Kan. Apr. 18, 2007) (same).

[69]*Boatright,* 2007 WL 2693674, at *5; *accord Lone Star Steakhouse*, 2003 WL 21659663, at *2 (Party moving to amend after the scheduling order deadline "must show that despite due diligence it could not have reasonably met the scheduled deadlines."); *Deghand*, 904 F.Supp. at
(continued...)

compatible with a finding of diligence and offers no reason for a grant of relief."[70]  Furthermore, the

lack of prejudice to the nonmovant does not show "good cause."[71]  A district court's determination

as to whether a party has established good cause sufficient to modify a scheduling order amendment

deadline is within the court's discretion, and will be reviewed only for an abuse of discretion.[72]

In this case, the amendment deadline was September 1, 2008.  BOK, however, took no action

to amend its Cross-Claim to plead a tortious interference claim until BOK included it in the proposed

Pretrial Order that was submitted to the Court on September 14, 2009.  Consequently, the amendment

was sought more than one year after the deadline.  BOK has made no attempt to show why it could

not have met this deadline even with the exercise of due diligence.  BOK merely argues that because

trial is not set until March 2, 2010, "KMBS will have ample time to prepare its defense."[73]  The Court

holds that BOK has failed to show good cause for allowing the amendment out of time.

Even if the Court were to consider the proposed amendment under Rule 15(a)(2) standards,

the Court would still deny amendment on grounds of undue delay and untimeliness.[74]  BOK's failure

to provide any excuse for its delay justifies denying amendment as a matter of law.  As the Tenth

---

[69](...continued)
1221 (same).

[70]*Lone Star Steakhouse*, 2003 WL 21659663, at *2 (quoting *Johnson* v. *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *accord Deghand*, 904 F.Supp. at 1221.

[71]*Lone Star Steakhouse,* 2003 WL 21659663, at *2; *Deghand*, 904 F. Supp. at 1221 (citations omitted).

[72]*Ingle v. Dryer*, No. 07-cv-00428-LTB-CBS, 2008 WL 1744337, at *2 (D. Colo. Apr. 11, 2008) (citing *Burks v. Okla. Publ. Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996)).

[73]BOK's Resp. to KMBS' Objection to Pretrial Order (doc. 168) at 9.

[74]*See Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) ("We have noted the 'rough similarity' between the 'undue delay' standard of Rule 15 and the 'good cause' standard of Rule 16.") (quoting *Minter*, 451 F.3d at 1205 n.4).

Circuit has held, "untimeliness alone may be a sufficient basis for denial of leave to amend. Prejudice to the opposing party need not also be shown."[75]

In light of the above, the Court will not allow BOK to amend its Cross-Claim to add a tortious interference claim against KMBS. The Court therefore upholds KMBS' objection to inclusion of the tortious interference claim in the Pretrial Order.

**B.      Should KMBS Be Allowed to Include in the Pretrial Order a "Legal Issue" Regarding BOK Owing a Duty to KMBS?**

In Section 9 of the parties' proposed Pretrial Order, KMBS included the following legal issue: "Whether BOK owed KMBS any duty and, if so, whether it breached said duty?"[76] BOK objected to it inclusion as a legal issues on grounds that "KMBS has never claimed or raised as an issue, either in pleadings, discovery, or by motion, that BOK owes any duty to KMBS."[77]

KMBS asserts no claims against BOK in either of these two consolidated cases. Nevertheless, KMBS argues that this alleged duty should be included as a legal issue. KMBS states in its brief:

> In including this proposed legal issue, KMBS was identifying that the conduct at issue in this case arises out of agreements between KMBS and Capital Solutions and between BOK and Capital Solutions. BOK claims to have been damaged as a result of a breach of both agreements. To the extent that BOK (a) claims that KMBS owes BOK some duty arising out of contract, or (b) that BOK is an assignee or successor in interest to Capital Solutions, then BOK may owe KMBS a corresponding duty.[78]

---

[75]*Woolsey v. Marion Labs., Inc*., 934 F.2d 1452, 1462 (10th Cir. 1991) (quoting *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182,1185 (10th Cir. 1990); *accord Duncan v. Manager, Dept. of Safety, City and County,* 397 F.3d 1300, 1315 (10th Cir. 2005) ("In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend."); *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir.2001) ("We have often found untimeliness alone a sufficient reason to deny leave to amend.").

[76]Proposed Pretrial Order, § 9, ¶ 4.

[77]*Id.*,

[78]*See* KMBS' Resp. to BOK's Objections Concerning the Parties' Pre-Trial Order (doc. 170)
(continued...)

The Court's Pretrial Order Form indicates that Section 9 is where the parties are to list "the *significant* legal or evidentiary issues that will need to be resolved by the court in this case, whether on summary judgment motion or at trial."[79] The instructions accompanying the Court's Pretrial Order Form direct the parties to identify "the *major* legal issues that are reasonably expected to determine the outcome of the case."[80] The instructions further state that "[e]ven in complex cases, the court anticipates that this list should contain no more than 10 such issues."[81] The issues need not be agreed upon; indeed, the instructions indicate that the parties may disagree about the existence or description of the legal issues and should "list all issues that *any party* believes exist."[82] The instructions further state that "[t]he only objection in this part of the pretrial order should be if a proposed legal issue has not been fairly preserved by the pleadings."[83]

---

[78](...continued)
at 4.

[79]Form Pretrial Order (available at http://www.ksd.uscourts.gov/forms/index.php), § 9 (emphasis added).

[80]*Id.* (emphasis added).

[81]*Id.*

[82]*Id.* (emphasis added).

[83]*Id.*

The Court sustains BOK's objection to the inclusion of this issue. KMBS does not identify where this issue has been "preserved," i.e., set out in the pleadings, and the Court is not inclined to scour the voluminous pleadings in this case to determine where this issue may have been raised. In any event, the Court fails to see how this could be construed to be a "major" or "significant" legal issue that is expected to determine the outcome of the case, given that KMBS asserts no claims against BOK, let alone any claims for breach of some duty by BOK. Moreover, the parties have already well exceeded the Court's recommended number of ten legal issues and have identified twenty-two legal issues. The Court will therefore remove this issue from the list of legal issues identified in Section 9 of the proposed Pretrial Order.

### C. Should KMBS Be Allowed to Include in the Pretrial Order Accrued Administrative Expenses as an Element of KMBS' Damages?

KMBS states in its Response to BOK's Objections that it is withdrawing its claim for accrued administrative expenses.[84] This issue is therefore moot.

**IT IS THEREFORE ORDERED** that KMBS' objection to BOK's inclusion in the Pretrial Order of a tortious interference cross-claim against KMBS is sustained, and no such cross-claim will be included in the Pretrial Order.

**IT IS FURTHER ORDERED** that BOK's objection to KMBS's inclusion in the Pretrial Order of a legal issue regarding BOK owing a duty to KMBS is sustained, and no such legal issue will be included in the Pretrial Order.

---

[84] *Id.* at 2.

**IT IS FURTHER ORDERED** that BOK's objection to KMBS's inclusion in the Pretrial Order of accrued administrative expenses as a element of KMBS's damages is moot, given KMBS' withdrawal of said claim.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 3rd day of November 2009.

s/David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel and *pro se* parties