IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CAPITAL SOLUTIONS, LLC,                )
                                       )
                   Plaintiff,          )
                                       )
         v.                            )        Case No. 08-2027-JWL
                                       )
KONICA MINOLTA BUSINESS                )
SOLUTIONS U.S.A., INC., and            )
BANK OF OKLAHOMA, N.A.,                 )
                                       )
                   Defendants.          )
                                       )
_____)
                                       )
                                       )
BANK OF OKLAHOMA, N.A.,                 )
                                       )
                   Plaintiff,          )
                                       )
         v.                            )        Case No. 08-2191-JWL
                                       )
CAPITAL SOLUTIONS, LLC;                )
MIKE BREAKEY; LARRY SEWARD;             )
LEE ULLMAN; and MIKE EARL,              )
                                       )
                   Defendants.          )
                                       )
_____)


## <u>MEMORANDUM AND ORDER</u>

In these two cases that have been consolidated for pretrial purposes, Capital

Solutions, LLC ("Capital") brings claims against defendant Konica Minolta Business

Solutions U.S.A., Inc. ("KMBS") arising out of their relationship in which KMBS

administered business equipment leases funded and held by Capital.  Capital originally

asserted claims against Bank of Oklahoma, N.A. ("BOK"), but it has abandoned those claims in the Pretrial Order. BOK has asserted claims against Capital relating to loans to and a security agreement with Capital; claims against Capital's principals (defendants Mike Breakey, Larry Seward, Lee Ullman, and Mike Earl) based on their guaranties of the Capital loans; and claims against KMBS arising out of that party's relationship with Capital.

The cases presently come before the Court on motions for summary judgment by BOK (Doc. # 181) and by KMBS (Doc. # 184). For the reasons set forth below, the Court rules as follows: BOK's motion for summary judgment against Capital and the individual guarantors is **granted** as unopposed. BOK's motion for summary judgment against KMBS is **granted in part and denied in part**. The motion is granted with respect to BOK's foreclosure of its security interest, its request for a preliminary injunction relating to its collateral, and liability for conversion; the motion is denied with respect to BOK's request for an accounting. KMBS's motion for summary judgment against BOK on BOK's conversion claim is **denied**. KMBS's motion for summary judgment against Capital is **granted in part and denied in part and retained under advisement in part**. The motion is granted with respect to Capital's fraud claim; the motion is retained under advisement with respect to Captial's damage claims for lost profits and the loss of the value of the business; and the motion is denied in all other

respects.[1]

## I.     Summary Judgment Standards[2]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant

---

[1]Still pending are Capital's motion regarding submission of punitive damage claims to the jury (Doc. # 147); BOK's motion for supplemental relief (Doc. # 173); KMBS's motions to exclude testimony by Mike Earl (Doc. ## 188, 266); and KMBS's motion to exclude testimony by Robert Eckholt (Doc. # 264).

[2]Particular facts are discussed as relevant to the discussion of particular issues below, viewed in accordance with these standards.

that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II.    BOK's Motion for Summary Judgment – Capital and Individuals

Capital and the individual defendants have not responded to BOK's motion for summary judgment on BOK's claims against them. Accordingly, BOK's motion is granted as unopposed. *See* Fed. R. Civ. P. 56(e)(2) (if party does not respond to motion, summary judgment should be entered against it if appropriate); D. Kan. Rule 56.1(b)(2)

(movant's material facts are deemed admitted for summary judgment if not controverted by opposing party); D. Kan. Rule 7.4 (if non-moving party fails to file a response, motion will be decided as uncontested and ordinarily granted without further notice).

Accordingly, BOK is awarded summary judgment against Capital and the individuals for breach of contract (the loan contracts and guaranties) in the total amount of $2,548,218.36, with additional interest accruing after November 1, 2009, until the date of judgment at a rate of $137.90 per day.

BOK is further awarded summary judgment against Capital on the following claims: (1) for a declaration that BOK maintains a valid, perfected security interest in all collateral and proceeds of that collateral under the parties' security agreement, and for the foreclosure of that security interest;[3] (2) for a preliminary injunction prohibiting Capital from selling or disposing of any equipment that constitutes collateral under the security agreement; (3) for an accounting of the collateral, proceeds, and payments with respect to any leases; (4) for liability for conversion (although no award can be made for damages at this time, as BOK asserted a claim of conversion of any amounts withheld by Capital, and such amounts have not been determined); and (5) for reasonable attorney fees and costs, the amount to be determined at a later time.

---

[3]The Court does not grant a declaration that BOK's security interest is a purchase money security interest or that the security interest has any particular priority, for the reasons set forth below with respect to the same claim against KMBS. *See infra* Part III.A.

### III. **BOK's Motion for Summary Judgment – KMBS**

BOK seeks summary judgment on some of its affirmative claims against KMBS. KMBS has filed a cross-motion for summary judgment with respect to BOK's conversion claim.

#### A. *Foreclosure of Security Interest*

BOK originally sought a declaration that its security interest in the collateral, including the leased equipment and lease payments, "is a perfected, prior, purchase money security interest enforceable against all other parties." After KMBS pointed out that a declaration of priority would be inappropriate in the absence of competing liens and that not all of the collateral was purchased with funds loaned by BOK, BOK agreed to limit its request to a declaration of a valid perfected security interest in the collateral. BOK also seeks the foreclosure of its security interest in the collateral.

In opposition, KMBS first argues that BOK was required to perfect its security interest with respect to any particular collateral in the state where the collateral was located, and that therefore BOK's perfection in Kansas was ineffective with respect to equipment located in other states, such as Nebraska. The Court rejects this argument. K.S.A. § 84-9-301(1) provides that, except as otherwise provided in that section, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection." *Id.* Because debtor Capital was located in Kansas, BOK perfected its security interest in this state. KMBS relies on K.S.A. § 84-9-301(2), which provides that "[w]hile collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection

. . . of a *possessory security interest* in that collateral." *Id.* (emphasis added). KMBS seems not to have noticed that this section applies only to the perfection of *possessory security interests*, however. *See id.* cmt. 4, 5 (general rule is perfection where debtor is located; exception is created for possessory security interests in paragraph (2) and for other types of security interests). Clearly, BOK does not claim a possessory security interest in the equipment, as it perfected its security by make a UCC filing and not by taking possession of the collateral away from the lessees. *See id.* cmt. 5 (general rule does not apply to possessory security interests, "i.e., security interests that the secured party has perfected by taking possession of the collateral"). Therefore, the general rule applies, and BOK properly perfected its security interest in Kansas, where Capital was located.

KMBS also argues that with respect to any particular piece of leased equipment, BOK's security interest ended at the termination of the lease of that equipment because at that time KMBS satisfied its contractual obligation to "buy back" the equipment. KMBS argues that when BOK entered into the security agreement with Capital, the equipment was already subject to the contractual buy-back obligation; thus, KMBS argues, BOK's security interest was similarly limited in deference to the buy-back obligation. Accordingly, KMBS argues that BOK no longer has any security interest in any piece of equipment for which the lease term has ended, or in any subsequent proceeds from the disposition of that equipment.

The Court rejects this argument as well. K.S.A. § 85-9-315(a)(1) provides that

"[a] security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest." *Id.* Thus, under the plain language of this provision, BOK's security interest in the equipment would continue despite the sale of that equipment to KMBS in accordance with a buy-back obligation. In an effort to avoid that result, KMBS cites a general rule that a secured party's interest in collateral is limited to the interest held by the debtor. KMBS has not cited any caselaw or other authority, however, in which that rule has been invoked in the context of an existing obligation to sell collateral at a later time. In this case, Capital may have been under an obligation to sell the collateral to KMBS at a later date, but its ownership interest in the equipment was not limited, as it still held legal title. Thus, under section 84-9-315(a)(1), BOK's security interest continued after the sale to KMBS.

This interpretation is supported by other provisions of the Kansas UCC. For instance, the term "sale" in the continuation provision equates with the passing of title. *See* K.S.A. § 84-2-106(1) (defining "sale" for purposes of Article 2); *id.* § 84-9-105(3) (Article 2's definition of "sale" applies in Article 9 as well). Moreover, K.S.A. § 84-2-401(2) provides that, unless otherwise explicitly agreed, title passes at delivery. *See id.*; *see also Weisbart & Co. v. First Nat'l Bank of Dalhart, Tex.*, 568 F.2d 391, 394-96 (5th Cir. 1978) (citing same provisions under Texas UCC in concluding that the continuation provision (formerly section 306(b)) did not apply before delivery of the collateral to the intended purchaser under an obligation to sell). The importance of the time of delivery

in this analysis is further supported by the exception to the continuation rule contained in K.S.A. § 84-9-317(b), which allows a buyer to take free of the security interest if it receives delivery of the collateral prior to perfection. *See id.*

KMBS has not provided any evidence that it and Capital had explicitly agreed that title in the equipment passed to KMBS at the time the buy-back obligation was created, as opposed to when KMBS actually paid for and took the equipment at the end of the lease. Accordingly, Capital's interest in the leased equipment was not was not somehow limited by the existence of the buy-back obligation, such that it could not grant a security interest in that collateral that would survive the sale to KMBS. Because title to the equipment had not yet passed to KMBS at the time the security interest was created, the continuation provision applies here.

Finally, KMBS argues that it takes the equipment free of BOK's security interest at the end of the leases pursuant to the continuation provision's exception for instances in which the secured party has authorized the disposition free of the security interest. *See* K.S.A. § 84-9-315(a)(1). KMBS bases this argument solely on the fact that the security agreement referred to the buy-back agreements in a debtor warranty and provided for a security interest in the buy-back agreements themselves and the proceeds from the buy-backs. The Court concludes, however, that BOK did not authorize the sale to KMBS free of its security interest by the mere references to the buy-back obligation. One comment to section 315(a)(1) states that the right to proceeds of collateral under the express terms of an agreement does not constitute an authorization of disposition, and

9

that the authorization must be for a disposition free of the security interest. *See id.* cmt. 2; *see also, e.g.*, *Northern Comm. Co. v. Cobb*, 778 P.2d 205, 207-08 (Alaska 1989) (citing this comment of the UCC in ruling that neither a right to proceeds nor the absence of a restriction on sale constitutes authorization).

KMBS has not pointed to any other evidence to suggest authorization by BOK here. Accordingly, the Court concludes that BOK maintains its security interest in the equipment and proceeds thereof even after the termination of the leases and KMBS's satisfaction of its buy-back obligations. KMBS has not made any other argument against summary judgment on this claim. Therefore, the Court awards BOK summary judgment on its claim for a declaration of a valid perfected security interest in the collateral and the foreclosure of that security interest.

## B. *Preliminary Injunction*

In its summary judgment motion, BOK also seeks a preliminary (not permanent) injunction prohibiting KMBS from selling the equipment in which it maintains a security interest. The Court agrees that a preliminary injunction to that effect is appropriate. *See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (listing factors for preliminary injunction). BOK has already achieved success on the merits of this claim, in light of the Court's ruling that BOK's security interest continues in the equipment even after KMBS's satisfaction of its buy-back obligation. There is a risk of harm to BOK from the disposition of its collateral, as KMBS has admitted to selling some of the equipment. That risk outweighs any possible harm to KMBS from the

issuance of an injunction for only one month until trial, when the parties may be heard on the propriety of a permanent injunction. For these reasons, the Court issues the requested preliminary injunction.[4]

### C. Accounting

BOK seeks summary judgment on its claim for an equitable accounting of the equipment leases, payments under those leases, and the equipment itself. The authority cited by BOK, however, does not establish that BOK is necessarily entitled to an accounting under Kansas law at this stage of the litigation. *See Karnes Enters., Inc. v. Quan*, 221 Kan. 596, 603-04, 561 P.2d 825, 831 (1977) (remedy is generally equitable for court to decide); *VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 29 F. Supp. 2d 1253, 1267 (D. Kan. 1998) (applying Missouri law to accounting claim). Accordingly, the Court denies BOK's motion for summary judgment on its claim against KMBS for an accounting.

### D. Conversion

Both sides seek summary judgment on BOK's conversion claim by which it alleges that KMBS has withheld (and thus converted) payments relating to the leases (for instance, lease payments, buy-out payments from lessees, and buy-back payments) that are due to Capital and therefore due to BOK after Capital's default on its loans from

---

[4]KMBS has not requested that BOK gives any security under Fed. R. Civ. P. 65(c), and the Court determines that no security is required here. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1214 (10th Cir. 2009) (district court has wide discretion in determining whether to require security under Rule 65(c)).

BOK (by virtue of Capital's instruction to KMBS to make payments directly to BOK).

BOK does not provide evidence of the actual amount allegedly owed by KMBS, but

instead states that the computation of damages must await an accounting; thus, the Court

considers summary judgment on this claim only on the issue of liability. *See* Fed. R.

Civ. P. 56(d)(2) (summary judgment may be rendered on liability only).[5]

The following law governs BOK's conversion claim:

> Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary to constitute a conversion that the property come into the defendant's possession wrongfully. Nor is it necessary that the alleged converter apply the property to his own use or be in bad faith.

*Steenbergen v. First Fed. Sav. and Loan of Chickasha*, 753 P.2d 1330, 1331 (Okla.

1987) (citations omittted).[6]

The Court concludes as a matter of law that KMBS is liable for the conversion

of some funds due to BOK, and that summary judgment is therefore appropriate in favor

of BOK with respect to liability on its conversion claim. That conclusion is based on

---

[5]The Court declines BOK's invitation for the Court to award it summary judgment at least in the amount tendered to the Court by KMBS in its motion to deposit funds pursuant to Fed. R. Civ. P. 67, as KMBS has not conceded in the Rule 67 briefing that all of that amount is actually owed to BOK.

[6]The parties applied New Jersey law to this claim. This Court has held, however, that under Kansas choice-of-law rules, a conversion claim is governed by the law of the state of the plaintiff's residence, where the plaintiff suffered its alleged financial harm. *See Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 691-92 (D. Kan. 2007). Thus, because BOK has its principal place of business in Oklahoma, the Court applies that state's conversion law.

KMBS's admissions that it has withheld certain amounts. For instance, in response to BOK's statement of facts in support of summary judgment, KMBS stated that it was uncontroverted that it has withheld certain amounts and that it has set aside funds to cover its estimation of those amounts (although KMBS denied that its withholding of the funds was wrongful). KMBS's corporate representative has confirmed recently in a deposition that KMBS has withheld funds due to BOK. Most telling are the admissions contained in KMBS's briefs in support of their motion pursuant to Fed. R. Civ. P. 67 to deposit into the Court over $500,000 in funds relating to the leases. KMBS concedes that it has all of the necessary data to calculate the amounts due to Capital and BOK relating to the leases; that Capital and BOK are entitled to such funds; and that it has calculated the amounts due, although it seeks assurances from the other parties that it has correctly determined the amount due. KMBS also seeks a setoff to account for personal property taxes that it had to pay on the equipment (in the Pretrial Order, KMBS estimates that amount at $50,000), but it admits that the remainder is due and owing to Capital and BOK. Because, as a matter of uncontroverted fact, KMBS has withheld payments due to BOK, KMBS must be liable for the conversion of any such funds.

The Court rejects the various arguments made by KMBS in opposition to summary judgment. First, KMBS argues that BOK has not shown the withholding of any particular payments; KMBS has admitted having withheld some payments, however, and thus it has shown itself to be liable for conversion, with the amount of damages (the amount withheld) to be determined at trial. Second, KMBS's insistence that it will pay

13

all amounts due, that the issue is only one of delay, and that it has acted in good faith and without wrongful intent is irrelevant, as all that is required for liability is that KMBS retained the funds and so interfered with BOK's right to possess those funds. Third, the Court rejects KMBS's reliance on the factors set forth in Restatement (Second) of Torts § 222A(2), which may be considered in determining the seriousness of interference and the justice for requiring the defendant to pay the full value. *See id.* In this case, there is no question concerning the degree of interference with BOK's rights, as KMBS simply withheld the payments from BOK. Fourth, the Court again rejects KMBS's argument that BOK did not retain a security interest in the equipment or subsequent proceeds after termination of the leases and the satisfaction of the buy-back obligations, for the reasons set forth above with respect to BOK's foreclosure claim. *See supra* Part III.A.

Fifth, KMBS argues that its contractual obligation to remit payments to Capital concerning the leases is excused by Capital's failure to send invoices and quotes to KMBS in satisfaction of a condition precedent. The Court rejects this argument as well. There was no written contract here, and the testimony cited by KMBS does not indicate a condition precedent or that KMBS was not required to remit payments if no invoices were sent, but only that it was Capital's responsibility to send such information and that that is how it worked in practice. KMBS has not conducted any analysis of the issue of a condition precedent under Kansas contract law. In fact, as noted above, KMBS has conceded that any amounts withheld belong to Capital and BOK, without regard to missing invoices from Capital. That admission and the failure to provide evidence of a

condition precedent entitles BOK to summary judgment with respect to liability.

Sixth, the Court rejects KMBS's argument that BOK has failed to satisfy a requirement of making a demand for the withheld payments. There does not appear to be such a requirement under Oklahoma law. Moreover, it is undisputed that KMBS knew that any payments were to go to BOK, that BOK has requested an accounting of all payments on more than one occasion, and that BOK sent KMBS an e-mail indicating that it would need to file a legal claim if KMBS could not determine the amounts due; thus, the Court concludes that BOK did make demand upon KMBS to pay all amounts due. Again, the Court does not find meaningful the fact that BOK did not identify discrete amounts in making its demand, as it clearly sought to recover all payments due from KMBS.

Finally, the Court does not consider KMBS's arguments that BOK's conversion claim is barred because of the existence of a contract remedy and by the economic loss doctrine, which were raised for the first time in KMBS's reply brief in support of its cross-motion for summary judgment (submitted after KMBS's response and BOK's reply on BOK's summary judgment motion). These are discrete arguments, and the Court does not agree that they were sufficiently raised in KMBS's prior briefs. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (court will not consider issues raised for first time in reply brief) (citing *Minshall*

*v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)).[7]

For these reasons, the Court grants BOK's motion for summary judgment on its conversion claim with respect to the issue of liability, and it denies KMBS's motion for summary judgment on that claim.[8]

_____

[7]Accordingly, the Court grants in part BOK's motion to strike new arguments from KMBS's reply brief (Doc. # 259). The Court denies the motion to strike as it relates to KMBS's argument that BOK's security interest was limited by Capital's own interest in the collateral.

[8]In light of its ruling, the Court need not consider the issue of the sufficiency of BOK's expert's opinion regarding amounts due from KMBS.

## IV.   KMBS's Motion for Summary Judgment Against Capital

### A.   *Claim for Breach of Contract*

KMBS seeks summary judgment on Capital's claim for breach of contract.  In its summary judgment brief, however, KMBS offers arguments only with respect to Capital's claim that KMBS breached the parties' contract by failing to remit payments concerning leases to Capital in a timely fashion.  Thus, the Court does not address any other allegations by Capital of breach by KMBS, which remain for trial.[9]

KMBS argues that it did not agree on any particular term governing the timing of its remittance of payments to Capital, and that it did not breach any applicable standard of reasonableness regarding that timing.  KMBS further argues that there were only minor instances of delays in payments, and that it therefore substantially performed under its contract with Capital and therefore no breach was material.

The Court concludes that there is sufficient evidence in the record to create a fact question for trial with respect to KMBS's timely remittance of payments to Capital.  Not only has Capital submitted evidence of erratic and late and withheld payments, but, as noted above, KMBS has admitted in its Rule 67 briefing that it still holds a substantial amount of payments that should be paid to Capital (or on Capital's behalf to BOK); thus, because some payments are still due from KMBS, there is at least a jury question

---

[9]The Court does not consider KMBS's arguments concerning Capital's allegation that KMBS did not collect and remit late fees, which KMBS raised for the first time in its reply brief.  *See, e.g.*, *Bunge*, 2008 WL 3077074, at *9 n.7.

concerning KMBS's breach of its payment obligations—even if KMBS has only "estimated" that amount due in its Rule 67 motion, as KMBS insists. Such is the case under either the agreed contractual term concerning the timing of payments, as asserted by Capital, or under a standard of reasonableness. Moreover, given the sizable amounts still withheld, even by KMBS's own estimates, the Court cannot conclude as a matter of law that KMBS substantially performed or that any breach was not material. Further, as discussed above, KMBS has not shown as a matter of law that the lack of invoices from Capital should excuse its obligation to remit payments to Capital. The Court also declines KMBS's invitation to the Court to resolve as a matter of law or grant "partial summary judgment" on any claim on payments by KMBS that have not been shown to have been late.

Finally, the Court rejects KMBS's argument that any delay in making payments for a short period in 2007 resulted from Capital's prior material breach in failing to fund an $881,000 portfolio of leases at that time. The Court cannot conclude as a matter of law that KMBS's obligation to remit payments on particular leases held by Capital was sufficiently tied to any promise by Capital to fund other particular leases.

Accordingly, the Court denies KMBS's motion for summary judgment on Capital's claim for breach of contract.

### B.    Damages

KMBS next seeks summary judgment on Capital's claims for damages for lost profits or damages for the failure of Capital's business or its banking relationship with

BOK. In the Pretrial Order, Capital has claimed various damages, including lost profits in the amount of $200,000 per year; "lost profits in the amount of $125,000, associated with the $800,000 transaction that BOK failed to fund;" and $300,000 for the value of Capital. KMBS's motion does not address any claims for particular damages by Capital other than these.[10]

With respect to these damage claims, KMBS argues that such consequential damages were not in the contemplation of the contracting parties and were not reasonably foreseeable; that Capital cannot show causation of such damages with sufficient certainty; and that these damage claims are speculative and Capital cannot establish the amounts of such damages with reasonable certainty. *See Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 877 F. Supp. 1478, 1484 (D. Kan. 1995) (under Kansas law, "[l]ost profits may be recovered as damages when such profits are proven with reasonable certainty and when they may reasonably be considered to have been within the contemplation of the parties") (citing *Vickers v. Wichita State Univ.*, 213 Kan. 614, 618, 518 P.2d 512, 515 (1974)).

Based on its review of the record, viewing all evidence and granting all reasonable inference in Capital's favor, the Court concludes that KMBS's foreseeability and causation arguments involve questions of fact for the jury to resolve, and that those

---

[10]The Court does not consider KMBS's suggestion, made for the first time in a footnote in its reply brief, that Capital's accounting claim is improper. *See, e.g.*, *Bunge*, 2008 WL 3077074, at *9 n.7.

arguments therefore do not provide a basis for summary judgment.

KMBS's remaining argument that Capital cannot establish the amounts of these damages with reasonable certainty, relates to KMBS's two motions to exclude opinion testimony by Mike Earl, whom Capital intends to offer to testify about these damages. The second of these motions was filed on February 2, 2010. Thus, the Court retains this portion of KMBS's summary judgment motion under advisement, so that the issue may be considered in conjunction with the motions to exclude Mr. Earl's testimony. Any response by Capital to the second motion concerning Mr. Earl (Doc. # 266) must be filed on or before **February 10, 2010**. KMBS will not be permitted a reply brief. The Court will then rule on those motions to exclude and this remaining issue concerning lost profits shortly thereafter.[11]

### C.    Claim for Breach of Fiduciary Duty

In seeking summary judgment on Capital's claim for breach of fiduciary duty, KMBS argues that it owed no such duty to Capital as a matter of law. The Tenth Circuit has set forth the applicable law:

> In *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982), the Supreme Court of Kansas summarized the law of fiduciary relationships as follows:
>
> In may be said that generally there are two types of

---

[11]On February 2, 2010, KMBS also filed a motion to exclude expert testimony from Robert Eckholt, an expert retained by BOK (Doc. # 264). The Court by separate order will provide deadlines in connection with that motion, which the Court will take up at the limine conference to be set in that same order.

fiduciary relationships: (1) those specifically created by contract such as principal and agent, attorney and client, and trustee cestui que trust, for example, and those created by formal legal proceedings such as guardian and/or conservator and ward, and executor and administrator of an estate, among others, and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.

. . .

Determination of whether this second type of fiduciary relationship "'exists depends on the facts and circumstances of each individual case. [The Supreme Court of Kansas] has refused, for that reason, to give an exact definition to fiduciary relations.'" *Id.* (quoting *Curtis v. Freden*, 224 Kan. 646, 651, 585 P.2d 993, 998 (1978)). Although such fiduciary relationships cannot be defined with precision, the Supreme Court of Kansas has prescribed "certain broad principles which should be considered in making the determination of whether a fiduciary relationship exists in any particular factual situation:

A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another*. A fiduciary is a person with a duty to *act primarily for the benefit of another*. A fiduciary is in a position to have and exercise, and does *have and exercise influence over another*. A fiduciary relationship implies a condition of *superiority of one of the parties over the other*. Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary*.

*Id.* (emphasis in original).

The court in *Denison* made clear that each of the general considerations listed above need not be present in every case in which a fiduciary relationship is alleged. However, the court emphasized that an overriding consideration in the law of fiduciary relationships was that "one may not abandon all caution and responsibility for his own protection and *unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as*

*a fiduciary.*" *Denison*, 230 Kan. at 696, 640 P.2d at 1243-44 (emphasis added). The court went on to state that "[t]his is particularly true when one . . . is fully competent and able to protect his own interests." *Id.*

*Rajala v. Allied Corp.*, 919 F.2d 610, 613-14 (10th Cir. 1990).

KMBS argues that no fiduciary duty was created in its arm's-length business deal with Capital, that it did not consciously assume any fiduciary duty, that each party acted only in its own interest, and that it was free to stop using Capital to fund leases at any time. The Court cannot conclude as a matter of law, however, that there was no fiduciary relationship here. It is undisputed that KMBS agreed to collect payments from lessees for Capital as a part of the arrangement with Capital. Thus, there is evidence of the conscious assumption of a duty by KMBS and from which either a principal-agent relationship could reasonably be inferred or that would support an implied duty under the totality of the circumstances here. KMBS states that a fiduciary duty is not created merely because one party collects money for another, but it has offered no authority for that position. Moreover, KMBS offers no argument in response to Capital's citation to testimony by KMBS's own expert that in her own practice and in the industry in general, a party acts in a fiduciary capacity when handling funds in administering leases for another party.

Accordingly, KMBS has not demonstrated that no fiduciary duty could exist here as a matter of law when the evidence is viewed and all reasonable inferences are granted in favor of Capital, and the Court denies KMBS's motion for summary judgment on this claim.

KMBS requests summary judgment on Capital's fraud claim.  In a previous ruling, the Court dismissed all of Capital's fraud claims except those based on three particular statements in 2007 by KMBS to Capital to the effect that all of its payments to Capital were up-to-date.  *See* Memorandum and Order of July 14, 2008 (Doc. # 153).[12] KMBS argues that Capital cannot establish by clear and convincing evidence that it actually and reasonably relied on the alleged misrepresentations by KMBS.  *See Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191, 1195 (2004) (elements for fraud cause of action include that plaintiff justifiably relied and acted to its detriment; fraud is never presumed and must be established by clear and convincing evidence); *North Tex. Prod. Credit Ass'n v. McCurtain County Nat'l Bank*, 222 F.3d 800, 813 (10th Cir. 2000) ("clear and convincing" standard for fraud applies at summary judgment stage).

In support of this argument, KMBS cites to the deposition of Mike Earl as the Rule 30(b)(6) representative of Capital.  Mr. Earl testified that he was the "lead person" acting for Capital with respect to these statements; that his response to KMBS at the time was that the statements that payments were current was not true; and that he believed that the statements were not true at the time.  Although this portion of the deposition is not cited by Capital, the Court notes that, on cross-examination by Capital's counsel, Mr.

---

[12]Capital's brief refers to a claim based on KMBS's sale of copiers.  No such claim was included in Capital's complaint or the Pretrial Order, however, and the Court therefore rejects the assertion of any such additional fraud claim.

Earl testified that although he disputed truth of the statements, he had no undisputed proof at that time that KMBS was withholding payments; and that he reasonably relied on the statements, and would have contacted customers and initiated litigation sooner if he had known of the falsity of the statements. Mr. Earl did not explain how the failure to take such actions harmed Capital in any way.

In its opposition brief, Capital cites only to a declaration in which Larry Seward states that Capital reasonably relied to its detriment. The declaration does not state how Capital relied or identify any particular actions taken in reliance. Thus, Mr. Seward's statement is impermissibly conclusory and cannot defeat summary judgment on this basis. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("conclusory and self-serving affidavits" are not sufficient to create issue of fact at summary judgment stage). Moreover, Mr. Seward states in the declaration that the falsity of the statements is demonstrated by the substantial payments remitted by KMBS in the time periods immediately following the alleged misrepresentations and by KMBS's own audit that Capital received shortly thereafter. Thus, according to Mr. Seward's declaration, Capital would have know that KMBS had made misrepresentations shortly after the statements were made.

Accordingly, the Court concludes that Capital has failed to submit clear and convincing evidence that Capital actually and reasonably relied on the alleged misrepresentations by KMBS. Mr. Earl's deposition may include evidence that Capital took some action in reliance on KMBS's statements (that is, not contacting customers

and not suing sooner), but Capital has not submitted any evidence showing why that action in reliance mattered—that is, what detrimental effect that had on Capital. Moreover, Mr. Earl testified that he, as "lead person", did not believe the statements by KMBS; thus, there is no clear and convincing evidence that any reliance by Capital was reasonable. *See e.g.*, *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 536, 739 P.2d 444, 453-54 (1987) (party cannot justifiably rely as a matter of law if it has information that provides a danger signal or if it is so skeptical as to the truth of the alleged misrepresentation that it reposes no confidence in it). For these reasons, the Court awards KMBS summary judgment on Captial's fraud claim.[13]

### E.    Claim for Tortious Interference

In the Pretrial Order, Capital alleges that KMBS tortiously interfered with both its contracts with lessees and its contracts with BOK.  KMBS objected in the Pretrial Order to the claim based on the contracts with BOK, on the basis that such a claim had not been included by Capital in its amended complaint.[14]  Indeed, there is no indication that Capital raised this claim before asserting it in the Pretrial Order, and the Court concludes that KMBS would suffer unfair prejudice if Capital were permitted to raise

---

[13]In light of this ruling, the Court need not address KMBS's other arguments regarding Capital's fraud claim.

[14]In ruling on other objections concerning claims in the Pretrial Order, the Magistrate Judge noted that Capital's amended complaint refers only to tortious interference with contracts with the lessees. *See* Memorandum and Order of Nov. 3, 2009, at 13 & n.55 (Waxse, Mag. J.) (Doc. #195).

this claim for the first time at this late stage of the litigation. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204, 1207-08 (10th Cir. 2006) (issue of new claim in pretrial order is evaluated under standards for Fed. R. Civ. P. 15(a); prejudice to opposing party is most important factor). Therefore, based on this record, the Court sustains the objection, and Capital will not be permitted to assert a new claim of tortious interference with its contracts with BOK.

That leaves Capital's claim that KMBS tortiously interfered with Capital's contracts with its lessees. KMBS made no argument regarding that claim in its original summary judgment brief, and the Court will not consider KMBS's argument first made in its reply brief. *See, e.g.*, *Bunge*, 2008 WL 3077074, at *9 n.7.

Accordingly, Capital's tortious interference claim is limited to interference with contracts with lessees, and summary judgment is denied on that claim.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion by Bank of Oklahoma, N.A. ("BOK") (Doc. # 181) is **granted in part and denied in part**. BOK's motion for summary judgment against Capital Solutions, LLC ("Capital") and individual defendants Mike Breakey, Larry Seward Lee Ullman, and Mike Earl is **granted** as unopposed, and judgment is awarded to BOK against those parties in the amount of $2,548,218.36, with additional interest accruing after November 1, 2009, until the date of judgment at a rate of $137.90 per day. BOK's motion for summary judgment against Konica Minolta Business Solutions U.S.A., Inc. ("KMBS") is **granted in part**

**and denied in part**.  As set forth herein, the motion is granted with respect to BOK's foreclosure of its security interest, its request for a preliminary injunction relating to its collateral, and liability for conversion.  The motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT the motion for summary judgment by KMBS (Doc. # 184) is **granted in part and denied in part and retained under advisement in part**.  KMBS's motion for summary judgment against BOK on BOK's conversion claim is **denied**.  KMBS's motion for summary judgment against Capital is **granted in part and denied in part and retained under advisement in part**. The motion is granted with respect to Capital's fraud claim; the motion is retained under advisement with respect to Capital's damage claims for lost profits and the value of the business; and the motion is otherwise denied.

IT IS FURTHER ORDERED THAT BOK's motion to strike (Doc. # 259) is **granted in part and denied in part**, as set forth herein.

IT IS FURTHER ORDERED THAT Capital shall file any brief in response to KMBS's motion to preclude expert testimony by Mike Earl (Doc. # 266) on or before **February 10, 2010**.  No reply brief by KMBS in support of that motion will be permitted.

IT IS SO ORDERED.


Dated this 5th day of February, 2010, in Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge