IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CAPITAL SOLUTIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KONICA MINOLTA BUSINESS )<br>SOLUTIONS U.S.A., INC., and )<br>BANK OF OKLAHOMA, N.A., )<br>)<br>Defendants. )<br>)<br>_____) | Case No. 08-2027-JWL |
| BANK OF OKLAHOMA, N.A., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAPITAL SOLUTIONS, LLC; )<br>MIKE BREAKEY; LARRY SEWARD; )<br>LEE ULLMAN; and MIKE EARL, )<br>)<br>Defendants. )<br>)<br>_____) | Case No. 08-2191-JWL |

## **MEMORANDUM AND ORDER**

In these two cases that have been consolidated for pretrial purposes, Capital Solutions, LLC ("Capital") brings claims against defendant Konica Minolta Business Solutions U.S.A., Inc. ("KMBS") arising out of their relationship in which KMBS administered business equipment leases funded and held by Capital. Capital originally

asserted claims against Bank of Oklahoma, N.A. ("BOK"), but it has abandoned those claims in the Pretrial Order. BOK has asserted claims against Capital relating to loans to and a security agreement with Capital; claims against Capital's principals (defendants Mike Breakey, Larry Seward, Lee Ullman, and Mike Earl) based on their guaranties of the Capital loans; and claims against KMBS arising out of that party's relationship with Capital. The Court recently made various rulings with respect to motions for summary judgment by KMBS and BOK. *See* Memorandum and Order of Feb. 5, 2010 (Doc. # 270).

These cases presently come before the Court on separate motions by each of the three main parties to this litigation. First, the Court **grants in part and denies in part** BOK's renewed motion for supplemental relief (Doc. # 173), and BOK's conversion claim against KMBS in the Pretrial Order is hereby amended to include a claim for bad faith attorney fees. Second, the Court **denies** KMBS's motion pursuant to Fed. R. Civ. P. 67 to deposit funds with the Court (Doc. # 186) because there is no dispute concerning the entitlement to the funds at issue. Third, the Court **grants** Capital's motion to allow the jury to determine the amount of any punitive damages awarded in this case (Doc. # 147) because the Seventh Amendment guarantees the right to a jury trial on that issue.

## I. BOK's Motion for Supplemental Relief

By its motion, BOK seeks leave pursuant to Fed. R. Civ. P. 15(d) to supplement its conversion claim against KMBS—and thus, amend the Pretrial Order—to add a request for attorney fees.[1] Motions to supplement are addressed to the discretion of the trial court, and they "should be liberally granted unless good reason exists for denying leave, such as prejudice." *See Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989).

In its motion, BOK provides two bases for its proposed claim for fees. First, BOK argues that fees are permitted on its conversion claim under *Millenium Financial Services, L.L.C. v. Thole*, 31 Kan. App. 2d 798, 74 P.3d 57 (2003). In its recent summary judgment order, however, the Court held that BOK's conversion claim was governed by Oklahoma law. *See* Memorandum and Order of Feb. 5, 2010, at 12 n.6 (Doc. # 270). BOK has not provided a basis for fees here under Oklahoma law. Accordingly, BOK's motion is denied with respect to a claim for attorney fees on this basis.[2]

BOK also seeks to claim fees based on KMBS's bad faith in pursuing its defense to the conversion claim during the course of the litigation. *See Towerridge, Inc. v.*

---

[1] BOK's original motion to supplement was denied without prejudice because BOK had failed to include a proposed supplemental pleading as required by D. Kan. Rule 15.1. *See* Order of Sept. 28, 2009 (Waxse, Mag. J.) (Doc. # 169). BOK has satisfied that requirement in its renewed motion.

[2] Even without the Court's choice-of-law ruling, this claim for fees under Kansas law would be improper, as BOK agreed in its summary judgment briefs that New Jersey law would govern the conversion claim.

*T.A.O., Inc.*, 111 F.3d 758, 768 (10th Cir. 1997) ("Where a party institutes an unfounded action wantonly or for oppressive reasons, or necessitates an action be filed or defends an action through the assertion of a colorless defense, that constitutes bad faith which is grounds for an award of attorneys' fees.") (citation omitted). It is not clear that such a claim, based on conduct during the course of the litigation, must be pleaded or included in the Pretrial Order. Nevertheless, the Court will grant BOK's motion to this extent and allow the Pretrial Order to be amended to include this claim.[3] The Court can perceive no prejudice to KMBS from the assertion of this claim at this time; a party is always on notice that bad faith conduct during litigation may support an award of fees, and the Court, in exercising its inherent authority to consider such a sanction, may provide for discovery or further investigation as needed in considering this claim after trial.

Accordingly, the Pretrial Order is hereby amended to include a claim for bad faith attorney fees relating to BOK's conversion claim against KMBS. KMBS is granted leave to assert any affirmative defense to that claim for inclusion in the Pretrial Order; KMBS shall assert any such defense by filing a pleading entitled "Supplemental Defense" on or before **February 19, 2010**.

---

[3] Because the Pretrial Order is hereby amended, BOK need not file its proposed supplemental pleading.

## II. KMBS's Motion to Deposit Funds Pursuant to Rule 67

Pursuant to Fed. R. Civ. P. 67, KMBS seeks to deposit the sum of $510,584.48 into the Court registry. That figure constitutes KMBS's calculation of amounts due to Capital—and thus, ultimately due to BOK—relating to Capital's various equipment leases. Capital and BOK oppose the motion, unless those funds are paid out immediately to BOK.

Rule 67(a) provides as follows: "If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it." *Id.* Whether to permit such a deposit lies within the discretion of the district court. *Garrick v. Weaver*, 888 F.2d 687, 694 (10th Cir. 1989). "A Rule 67 deposit is proper only when there is a dispute concerning the funds." *Mobil Oil Corp. v. United States Dept. of Energy*, 124 F.R.D. 217, 218 (D. Kan. 1989) (citations omitted).

KMBS does not explain in its briefs why it seeks to deposit these funds with the Court. Nor do Capital and BOK adequately explain why they do not at least want these funds to be secured.[4] Regardless, because the Court concludes that there is no real dispute concerning entitlement to these funds, the Court denies the motion.

---

[4]The Court does not agree that KMBS could somehow gain favor with the jury by making this deposit, as the deposit would not appear to be relevant to any issue in the jury trial.

5

The Court rejects KMBS's arguments that these amounts are truly in dispute. First, KMBS has conceded that any payments relating to the leases are properly payable to Capital and to BOK, and that it has the data required to calculate the required payments. KMBS argues that it lack assurances from Capital and BOK that its calculations are correct. Regardless, KMBS believes that it owes these funds, by its own calculations, and although Capital and BOK may seek additional payments from KMBS, they do not dispute that these payments at least should be paid over to them. Second, by its summary judgment ruling, the Court has already disposed of KMBS's argument that BOK's security interest in the equipment ended when the leases terminated and KMBS satisfied its buy-back obligation. *See* Memorandum and Order of Feb. 5, 2010, at 7-10 (Doc. # 270). Third, KMBS argues that it should be entitled to some of these funds as a setoff for property taxes that it paid on the equipment. Although KMBS has not identified the amount of that setoff, it has knowledge of the amount of taxes it has paid. Thus, KMBS knows the precise amount that it concedes belongs to BOK, even if a setoff were applied.[5]

Accordingly, there is no real dispute concerning the parties' entitlement to the funds that KMBS seeks to deposit with the Court, and the Court therefore denies the motion under Rule 67.

---

[5] In light of this issue of a setoff, the Court declines BOK's invitation to have these funds paid in and then immediately paid out to BOK.

## III. Capital's Motion for Jury Determination of Punitive Damages

Capital seeks punitive damages from KMBS under Kansas law. K.S.A. § 60-3702(a) prescribes a procedure by which the jury first determines whether punitive damages should be allowed, and then the court determines the amount of such damages in a separate proceeding. Capital seeks a ruling that Section 60-3702(a)'s bifurcated procedure should not be followed in this diversity action and that the jury should determine the amount of any punitive damages. In this regard, Capital argues that either the bifurcated process is a matter of state procedural law that the Court should not apply under *Erie* principles, or the Seventh Amendment requires jury determination of the amount of punitive damages.

With respect to the *Erie* analysis, this Court has previously followed the two-step process in Section 60-3702(a) based on its conclusion that the entire Kansas punitive damages scheme is substantive in nature. *See, e.g.*, *Deere & Co. v. Zahm*, 837 F. Supp. 346, 352 n.2 (D. Kan. 1993) (Lungstrum, J.). The Court remains firm in that conviction. The bifurcated process in Section 60-3702(a) was enacted as part of a comprehensive tort reform movement by the Kansas Legislature in the late 1980s that was clearly designed to affect the size of damage awards. *See* Jerry R. Palmer & Martha M. Snyder, *A Practitioner's Guide to Tort Reform of the '80s: What Happened and What's Left After Judicial Scrutiny*, 57 J. Kan. Bar Ass'n, Nov.-Dec. 1988, at 21-22, 26; *1987 KBA Legislative Policy*, 56 J. Kan. Bar Ass'n, Jan. 1987, at insert p. 4 (advocating two-stage punitive damage process among other changes to curb punitive damage awards). Thus,

7

because failing to apply the two-step process in federal court would not likely produce the same outcome that would be achieved by litigation in a Kansas state court and would likely encourage forum-shopping by plaintiffs, the bifurcated process represents a matter of substantive law under *Erie* analysis that would ordinarily be applied in a diversity case. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996) (setting out substantive-procedural test for purposes of *Erie* rule).[6]

This Court has not previously been asked to consider, however, whether applying Section 60-3702(a)'s bifurcated process violates the Seventh Amendment's guarantee of trial by jury.[7] Capital has expressly invoked the Seventh Amendment in this case; thus, the Court considers the question for the first time, and it concludes that the Seventh Amendment does require that the jury also be allowed to determine the amount of any punitive damages awarded.

The Seventh Amendment to the United States Constitution provides as follows: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the

---

[6]Judges in this district have split regarding whether having the court decide the amount of punitive damages is a matter of substantive or procedural law for purposes of the *Erie* rule. *See Jones v. United Parcel Serv.*, 2008 WL 3884313, at *2 & n.8, 9 (D. Kan. Aug. 18, 2008) (noting split and citing cases).

[7]It appears that the only times judges in this district have addressed the issue in reported cases they have concluded that the Seventh Amendment does trump Section 60-3702(a) and require submission of the amount of punitive damages to the jury. *See Vance v. Midwest Transport, Inc.*, 314 F. Supp. 2d 1089, 1091-93 (D. Kan. 2004) (Brown, J.); *Oleson v. Kmart Corp.*, 185 F.R.D. 631, 635-37 (D. Kan. 1999) (Crow, J.); *Busby, Inc. v. Smoky Valley Bean, Inc.*, 1993 WL 105142, at *2 n.1 (D. Kan. Mar. 16, 1993) (Crow, J.).

8

right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. The Supreme Court has set forth the governing test as follows:

> [W]e ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was. If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996) (citations omitted); *accord City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999).

In applying this test to the issue of the determination of the amount of punitive damages, the Court first looks for guidance to the opinions of the Supreme Court. In *Curtis v. Loether*, 415 U.S. 189 (1974), the Supreme Court, on the basis of the Seventh Amendment, upheld the circuit court's reversal of the district court's denial of actual damages and award of punitive damages on a claim under Title VIII of the Civil Rights Act. *See id.* at 198. Although the Court noted that not all forms of monetary relief (for example, back pay) must necessarily be "legal" relief, it concluded that "the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law." *See id.* at 196-97. The Court did not explicitly state that the Seventh Amendment applied to the determination of both entitlement to and the amount of punitive damages; but it concluded that punitive damage claims are actions at law under

9

the Seventh Amendment, and it did not carve out the question of the amount of punitive damages in holding that the plaintiff's actual and punitive damage claims should have been tried to a jury. Thus, *Curtis* suggests that the amount of punitive damages is a question for the jury under the Seventh Amendment.

KMBS cites to the Supreme Court's subsequent decision in *Tull v. United States*, 481 U.S. 412 (1987), which involved a claim by the Government for a civil penalty under the Clean Water Act. *See id.* The Court in *Tull* first held that remedies intended to punish were legal, not equitable, at common law, and that the defendant therefore had a constitutional right to a jury trial to determine his liability for the civil penalty. *See id.* at 422-25 (citing *Curtis*, 415 U.S. at 197, for its holding that "punitive damages remedy is legal, not equitable"). The Court further held, however, that the assessment of the civil penalty is not an essential function of a jury trial, and that therefore the Seventh Amendment did not guarantee the right to a jury trial on the question of the amount of the penalty. *See id.* at 426-27. KMBS argues that the same result is appropriate here—that although the Seventh Amendment may require submission to the jury of the issue of a party's entitlement to punitive damages, it does not require submission of the issue of the amount of those damages.

The Supreme Court has made clear, however, that the *Tull* distinction between entitlement to and the amount of damages does not apply to all forms of damages. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 354-55 (1998). In *Feltner*, the Court, after concluding that a claim for damages under the Copyright Act was a legal

10

claim under the Seventh Amendment, held that "[t]he right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner." *See id.* at 353 (emphasis in original). Among the authorities cited by the Court in support of that holding was *Coryell v. Colbaugh*, 1 N.J.L. 77 (1791), the holding of which the Court described in a parenthetical as "sustaining correctness of jury award of exemplary damages in an action on a promise of marriage." *See id.* The Court rejected an argument based on *Tull* and distinguished that case; the Court noted that in *Tull* the Court was "presented with no evidence that juries historically had determined the amount of civil penalties to be paid to the Government," while in *Feltner* there was "clear and direct historical evidence that juries, both as a general matter and in copyright cases, set the amount of damages awarded to a successful plaintiff." *See id.* at 354-55.

Thus, *Tull* does not compel a result in favor of KMBS here; rather, the question turns on whether juries historically have determined the amount of punitive damages. In both *Curtis* and *Feltner*, the Court suggested that that question should be answered in the affirmative. The Court's opinion in *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991), does likewise. In *Haslip*, the Court rejected a due process challenge to a jury's determination of punitive damages. *See id.* In that analysis, the Court noted that "[p]unitive damages have long been a part of state tort law." *See id.* at 15 (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984)). The Court further noted that "[u]nder the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need

11

to deter similar wrongful conduct." *See id.* The Court quoted its previous observation, made in 1852, that the imposition of punitive damages "has always been left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case." *See id.* at 16 (quoting *Day v. Woodworth*, 13 How. 363, 371 (1852)). The Court cited other cases throughout its history in which it affirmed the common-law practice of a jury's awarding punitive damages. *See id.* (citing cases).

Taken together, these cases make clear that, in the Supreme Court's view, an award of punitive damages, including the amount of the award, has traditionally been a task for the jury; thus, under the required Seventh Amendment historical analysis, the right to a jury attaches not only to the issue of a plaintiff's entitlement to punitive damages, but also to the amount of such damages. *See Hartford Fire Ins. Co. v. First Nat'l Bank of Atmore*, 198 F. Supp. 2d 1308, 1310-12 (S.D. Ala. 2002) (reaching same conclusion after analysis of Supreme Court cases).

KMBS also argues that the Supreme Court decided this issue in its favor by its opinion in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001). In *Cooper*, the Court held that appellate review of a district court's determination that a punitive damages award did not violate due process did not implicate the Seventh Amendment, for the reason that the level of punitive damages is not a "fact" tried by the jury. *See id.* at 437. That holding, however, was based on the second clause of the Seventh Amendment, the "reexamination clause", and not on the "trial by jury" clause

12

that is at issue in the present case—a distinction made clear by the Court in *Cooper*. *See id.* at 437 n.11 (noting that the Court previously distinguished between the two clauses in *Gasperini*, 518 U.S. at 432). The fact that the Court felt compelled to make that distinction in *Cooper* further supports the conclusion that the determination of the amount of punitive damages does fall within the scope of the Seventh Amendment's trial-by-jury clause.

The law of the Tenth Circuit is consistent with this conclusion. *See O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1447-50 (10th Cir. 1987). In *O'Gilvie*, the Tenth Circuit reversed a ruling by which the district court had reduced a punitive damage award without giving the plaintiff the option of a new trial. *See id.* The Tenth Circuit noted the general rule that "in an ordinary remittitur case, the plaintiff must be offered a choice between a new trial and accepting a remittitur to avoid a serious problem under the Seventh Amendment, which reserves to the jury the determination of damages." *See id.* at 1447 (citations omitted).[8] The court then applied that general rule to the punitive

---

[8]Thus, because the judge is setting the amount of damages in a remittitur, instead of the jury, this rule implicates the trial-by-jury clause of the Seventh Amendment and not the reexamination clause (which limits the district court's method of review of the jury's verdict to the rules of common law). *See, e.g.*, *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir. 1984) (cited in *O'Gilvie* as authority for the general rule; in discussing rule, noting that Seventh Amendment reserves determination of damages to the jury); *Defender Indus., Inc. v. Northwestern Mut. Life Ins. Co.*, 938 F.2d 502, 506-07 (4th Cir. 1991) (relying on Seventh Amendment's guarantee of a right to trial by jury in reversing remittitur without new trial option); *Hartford Fire Ins. Co.*, 198 F. Supp. 2d at 1310-12 (rejecting argument under *Cooper* and noting *Cooper*'s distinction between the two clauses, while also citing remittitur cases, including *O'Gilvie*, to support
(continued...)

damages award before it, holding that the district court acted without authority when it first concluded that the amount of punitive damages did not shock the conscience in violation of due process, but nonetheless determined the amount of punitive damages. *See id.* at 1450. Thus, the Tenth Circuit has indicated that the Seventh Amendment applies to the determination of the amount of punitive damages.[9]

Finally, the Court notes that other circuit courts of appeal have also concluded that the determination of the amount of an award of punitive damages falls within the scope of the Seventh Amendment's trial-by-jury clause. *See, e.g.*, *Defender Indus., Inc. v. Northwestern Mut. Life Ins. Co.*, 938 F.2d 502, 506-07 (4th Cir. 1991); *see also Hartford Fire Ins. Co.*, 198 F. Supp. 2d at 1312 (citing cases).

For these reasons, the Court concludes that the Seventh Amendment guarantees Capital the right to have the entirety of its claim for punitive damages, including the determination of the amount, decided by the jury. Accordingly, the Court grants Capital's motion.

---

[8](...continued)
conclusion that the trial-by-jury clause requires submission of the amount of punitive damages to the jury).

[9]The Tenth Circuit has also held that the characterization of a claim as legal or equitable for purposes of the Seventh Amendment "must be made by recourse to federal law." *See Mile High Indus. v. Cohen*, 222 F.3d 845, 856 (10th Cir. 2000) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)). Thus, the fact that the Kansas Supreme Court described a claim for punitive damages as equitable in nature in concluding that the bifurcated process in K.S.A. § 60-3702 did not violate the trial-by-jury provision of the Kansas Constitution, *see Smith v. Printup*, 254 Kan. 315, 322-32, 866 P.2d 985, 992-98 (1993), is not relevant to this Court's analysis.

14

IT IS THEREFORE ORDERED BY THE COURT THAT BOK's renewed motion for supplemental relief (Doc. # 173) is **granted in part and denied in part**, as set forth herein; the Pretrial Order in this case is hereby amended to include a claim by BOK for bad faith attorney fees relating to BOK's conversion claim against KMBS. KMBS is granted leave to assert any affirmative defense to that claim for inclusion in the Pretrial Order; KMBS shall assert any such defense by filing a pleading entitled "Supplemental Defense" on or before **February 19, 2010**.

IT IS FURTHER ORDERED BY THE COURT THAT KMBS's motion pursuant to Fed. R. Civ. P. 67 to deposit funds with the Court (Doc. # 186) is **denied**.

IT IS FURTHER ORDERED THAT Capital's motion to allow the jury to determine the amount of any punitive damages awarded in this case (Doc. # 147) is **granted**.

IT IS SO ORDERED.

Dated this 11th day of February, 2010, in Kansas City, Kansas.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge